**Lois Olson ELIAS, Plaintiff,**

v.

**The EL PASO COUNTY COMMUNITY COLLEGE DISTRICT, Defendant.**

**No. EP–78–CA–161.**

United States District Court,
W.D. Texas,
El Paso Division.

March 30, 1982.

Kitty Schild, El Paso, Tex., for plaintiff.

Mark Berry, Edward W. Dunbar, Christie, Berry & Dunbar, El Paso, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

HUDSPETH, District Judge.

This is a sex discrimination case brought pursuant to 42 U.S.C. § 2000e. The Plaintiff, an instructor at the El Paso Community College, claims that she was denied appointment to the position of Dean of Curriculum and Instruction solely on the basis of her sex, and that a less qualified male applicant received the appointment. Defendant contends that the choice was based upon the recommendation of a merit selection committee; that all applicants, including the Plaintiff, were given full consideration; and that the eventual appointee was selected on the basis of those factors traditionally used in the selection of administrators in higher education, in which sex played no part.

The El Paso County Community College District is a political subdivision of the State of Texas. It operates a multi-campus public junior college in El Paso County, Texas, under the general supervision of a publicly elected Board of Trustees. The organization of the District began in 1969, but the first classes were not offered until fall 1971. At first, classes were offered at night in public high school buildings. In the early 1970's, the Community College leased some barracks-type buildings on the Fort Bliss Military Reservation, and this became known as the "Logan Heights Campus." Both administrative offices and classrooms were located in these old Army buildings. The lease was to expire in 1977, but a one-year extension was obtained. In the mid 1970's, the Community College also acquired space in an old public schools administration building in downtown El Paso, to house an Allied Health Program. This building was called the Rio Grande Campus. By the time the Logan Heights lease expired in 1978, two other campuses were coming into service. At the time of trial, the Community College was operating three campuses: Valle Verde in southeast El Paso; Transmountain in northeast, and Rio Grande. The enrollment grew from 900 students in 1971 to more than 10,000 today. Funding is received from four sources: (1) State of Texas appropriations; (2) student fees; (3) El Paso County tax levies, and (4) Federal grants for specified projects or programs. The Community College offers both academic and vocational programs.

Dr. Robert Shepack became President of El Paso Community College in September 1976. Soon thereafter, the Board of Trustees adopted a new organizational framework for the Community College administration (Def.Ex. FF), to be effective in 1977. One of the newly created positions was that of Dean of Curriculum and Instruction, the position involved in the instant suit.

Another extremely important event in the history of the Community College occurred in the Spring of 1977: the visit of the Accreditation Committee of the Southern Association of Colleges and Schools. Obtaining full accreditation was crucial to the future of the Community College,[1] and this was the first step in the process. At the conclusion of its visit to El Paso in June 1977, the Accreditation Committee recommended that the new administrative positions in the organizational structure of the Community College (Vice Presidents, Deans, and Associate Deans) be filled "by highly qualified and experienced individuals," particularly in view of the fact that the existing staff was "relatively young and lacking in broad based community college experience." [2] (Def.Ex. SS, p. 4).

It was against this background that procedures were initiated in the summer of 1977 to select a Dean of Curriculum and Instruction. A job announcement (Pl.Ex. 24) was published locally (e.g., advertised in the daily El Paso newspapers) and nationally (e.g., advertised in the Chronicle of Higher Education) in an effort to elicit wide response. As a result, 102 applications were received from all over the United States. Plaintiff Elias filed her application on June 16, 1977 (Pl.Ex. 25 and Def.Ex. D), and supplemental applications on August 9 (Def.Ex. F) and September 15, 1977 (Def.Ex. G). An Evaluation Committee was appointed on August 4, 1977, consisting of eleven members. A set of guidelines was furnished to the committee for its use in screening applicants (Def.Ex. I). The committee met on August 8, 1977, and chose Blaine Nelson, a political science instructor,

1. More than half the college's operating revenues come from state appropriations. The Community College could not draw on these funds with respect to the academic (non-vocational) segment of its program without approval of the Texas College Coordinating Board, and the Board insisted upon accreditation.

2. The Committee's final, written report and recommendation was not received until October 1977. However, the committee's findings were communicated to Dr. Shepack and the Community College Administration orally on June 7, 1977. A draft of the written report was sent to the Community College in July or August 1977. The Community College had until December 1978 to comply.

as chairman. An evaluation form (Def.Ex. N) was adopted by the committee, and the following procedure was agreed upon: All committee members would review all 102 applications and execute an evaluation form (Def.Ex. N) rating each candidate before the committee's next meeting on August 18, 1977; at that meeting, the list would be narrowed down and a determination made as to which candidates would be interviewed. The procedure was followed; the second meeting was held; the results were tabulated, and committee discussion took place as to the relative qualifications of the applicants. On August 26, 1977, the committee recommended that 12 applicants be considered for personal interviews (Pl.Ex. 77; Def.Ex. 5). The Plaintiff was not one of the committee's 12 finalists.

On August 31 and September 2, 1977, Chairman Nelson met with Dr. Shepack to discuss whom to interview for the position of Dean of Curriculum and Instruction. Shepack was concerned about the relative paucity of women (only one of the 12 finalists was female), and suggested that Plaintiff Elias be interviewed for the position. In actual fact, only four candidates received personal interviews: Max Castillo, Ronald Lingle, George Marchelos, and the Plaintiff. After the interviews, the committee reevaluated the four candidates, with the following results (90 being the maximum score): Marchelos, 82.29; Castillo, 73.31; Lingle, 59.44; Elias, 46.50. Chairman Nelson presented to President Shepack the committee's recommendation that Marchelos be appointed. Dr. Shepack recommended Marchelos to the Board of Trustees, which body approved the appointment of Marchelos as Dean of Curriculum and Instruction.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, contending that she was better qualified for the position of Dean of Curriculum and Instruction than George Marchelos, and that the Community College's failure to appoint her was based on sex discrimination. All administrative remedies have been exhausted, and all prerequisites to suit accomplished.

In a Title VII case alleging disparate treatment, such as this one, the plaintiff has the burden of proving that she applied for an available position for which she was qualified, but that she was rejected under circumstances which give rise to an inference of unlawful discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If she succeeds in making such a prima facie case, the burden shifts to the employer to produce evidence that the plaintiff was rejected, or another applicant was preferred, for a legitimate, non-discriminatory reason. *Texas Department of Community Affairs v. Burdine, supra.* The plaintiff, who at all times has the burden of persuasion, must then prove that the proffered reason for her rejection was a pretext, and that she was actually the victim of sex discrimination. *Texas Department of Community Affairs v. Burdine, supra.* The plaintiff, who at all times has the burden of persuasion, must then prove that the proffered reason for her rejection was a pretext, and that she was actually the victim of sex discrimination. *Texas Department of Community Affairs v. Burdine, supra; McWilliams v. Escambia County School Board,* 658 F.2d 326, 331 (5th Cir. 1981). Since plaintiff bears the burden of proof, the defendant is not required to prove that the person chosen was *more* qualified than the plaintiff; employers are free to choose among equally qualified applicants so long as illegal criteria are not used. *Texas Department of Community Affairs v. Burdine, supra; Robbins v. White-Wilson Medical Clinic, Inc.,* 660 F.2d 1064, 1066 n. 2 (5th Cir.1981); *McWilliams v. Escambia County School Board, supra.*

In the instant case, Defendant contends that the qualifications of Mr. Marchelos and Plaintiff were reviewed by an evaluation committee representing a cross-section of the Community College; that the committee recommended Marchelos for the appointment as Dean of Curriculum and Instruction, ·and that the administration and the Board of Trustees followed that recommendation and appointed him. Has Plain-

tiff carried her burden of proving that Marchelos was less well qualified than she, and that she was not appointed to the position because of her sex?

The job description for the position in question seems relatively clear and free of the gobbledygook [3] which sometimes infects such job descriptions in the field of education. The principal tasks of the Dean of Curriculum and Instruction were to oversee the operation and development of curriculum, primarily in the academic or "arts and sciences" phase of the Community College program; evaluate and supervise faculty; coordinate program development by Division Chairpersons; assure compliance with all requirements of the Texas College Coordinating Board; develop some system for continuous evaluation of teaching effectiveness, and generally to provide the leadership and supervision expected of a dean. The Plaintiff has taken the position before the EEOC, and before this Court, that she was better qualified to perform these duties than was Mr. Marchelos, who received the appointment. It is therefore appropriate to review their respective qualifications.

Plaintiff Elias was born in 1936, and was 41 years old at the time of her application. She was graduated from high school in Tallahassee, Florida, and attended Florida State University for a year and a half. She quit school to marry, and relocated in El Paso in 1956. She worked for various employers as a secretary, including several years as executive secretary to the vice president of Whitfield Tank Lines, a trucking company. Over the years, she became what she described as an unofficial office manager, performing many management duties in addition to secretarial duties. She left her position to enroll as a student at the University of Texas at El Paso in 1967. In 1971, she was awarded a B.S. degree in Secondary Education, and was hired by the Community College as the "lead instructor" in Secretarial Sciences. From 1972 to 1977, she served as Discipline Coordinator (equivalent to a department head) for Secretarial

Sciences, and was acting Division Chair in the Business Division for a time. In 1976, a permanent Division Chairman for Business was appointed, and Plaintiff dropped back to being Discipline Coordinator. She did not apply for the Division Chair position in 1976 for several reasons: (1) She perceived it as a "dead end"; it was her impression that no Division Chairperson had ever "moved up"; (2) As an administrative position, the Division Chair was a 12 months a year job, and Plaintiff preferred the nine month year she enjoys as an instructor; (3) She did not agree with the reorganization plan of the new President which resulted in the appointment of a permanent Division Chairman. At the time of her application for Dean of Curriculum and Instruction in June 1977, Plaintiff was once again serving as instructor and Discipline Coordinator. Between 1971 and 1977, while employed full time at the Community College, Plaintiff had obtained two advanced degrees: a M.Ed. from Sul Ross State University in 1974 and a Doctor of Education from Nova University in 1977.

George Marchelos was born in May 1937, and was 40 when his application (Def.Ex. H) was filed. He was graduated from the University of Florida in 1960 with a B.S. in Chemistry. In 1964, he was awarded a B.A. in History and in 1967, an M.A. in History, also by the University of Florida. At the time of his application, he had completed his course work toward a doctorate in education, and expected to complete his dissertation and receive his degree in 1978. His application also reflected 90 hours' credit toward a Ph.D. in European History at Florida. Marchelos had entered Community College teaching at Meramec Community College in St. Louis, Missouri in 1967. After four years, he went to Rappahannock Community College in Virginia as a Division Chairman and Educational Development Officer. In 1973, he went to Harford Community College, where he served as Assistant Dean for Instruction and later, Assistant Dean for Learning Resources and Staff Development. He held the latter title

3. See Maverick, "The Case Against Gobbledygook," New York Times Magazine, May 21, 1944, p. 11.

at the time he applied for the Dean's position at El Paso Community College.

■ It is not the job of the Courts to "second guess" employment or promotion decisions made by officials of an institution of learning. As the Second Circuit has stated:

> "Title VII does not require that the candidate whom a court considers most qualified for a particular position be awarded that position; it requires that the decision among candidates not be discriminatory. When a decision to hire, promote, or grant tenure to one person rather than another is reasonably attributable to an honest even though partially subjective evaluation of their qualifications, no inference of discrimination can be drawn." *Lieberman v. Gant,* 630 F.2d 60, 67 (2nd Cir.1980).

See also *Texas Department of Community Affairs v. Burdine, supra; Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012 n. 6 (1st Cir.1979). In this particular case, however, an objective observer would be required to conclude, as did the evaluation committee, that Mr. Marchelos' qualifications were superior to those of the Plaintiff where it really counted—in experience.[4] In 1967, when Plaintiff resumed her formal education, Marchelos began teaching at a Community College. In 1971, when Plaintiff was graduated from U.T.E.P., Marchelos became a Division Chairman. Between 1973 and 1977, while Plaintiff served as an instructor and department head, Marchelos held two different assistant deanships at Harford Community College. Plaintiff, for reasons of her own, did not desire to gain experience through serving as a Division Chairperson or Assistant Dean; she was interested only in the position of Dean or above.[5] She wanted to be baptized one Sunday and fill the pulpit the next. As one member of the evaluation committee aptly put it, the Plaintiff "had the potential, but not the experience."[6] The need for Community College administrative experience in this position was especially vital in light of the report of the Accreditation Committee of the Southern Association of Colleges and Schools. After a full review of the candidates' qualifications and personal interviews, the evaluation committee gave Marchelos a "grade" of 91,[7] as opposed to Plaintiff's "grade" of 52.[8] The members of the evaluation committee testified at the trial, and uniformly denied that the sex of any applicant played a part in their consideration. The Court finds their testimony to be both credible and convincing. The only even arguable instance of sex discrimination in the selection process was one that inured to Plaintiff's benefit, to wit: the suggestion of Dr. Shepack that the evaluation committee interview her because too few women had made it to the finals. The Administration and the Board of Trustees of the Defendant followed the recommendation of the evaluation committee, and appointed George Marchelos Dean of Curriculum and Instruction. That decision was reasonably attributable to an honest evaluation of the candidates' respective qualifications, and the evidence fails to give rise to any inference of sex discrimination. *Lieberman v. Gant, supra.*

The Plaintiff appears to be a highly motivated and competent individual with much promise and potential. She may have the makings of a good administrator in the field of higher education. However, she has failed to show by a preponderance of the evidence that Defendant's decision not to appoint her to the position of Dean of Curriculum and Instruction in September 1977 was tainted by invidious discrimination.

---

**4.** "Can't you give me brains?" asked the Scarecrow.

"You don't need them. You are learning something every day. A baby has brains, but it doesn't know much. Experience is the only thing that brings knowledge...." Baum, *The Wizard of Oz,* p. 152 (Grosset & Dunlap Ed. 1956).

**5.** Plaintiff also applied in 1977 for the position of Vice President of Instruction and Student Services (Def.Ex. E).

**6.** Testimony of Ted Martinez.

**7.** Marchelos received an average 82.29 points out of a possible 90 points.

**8.** 46.5 points out of a possible 90.

■ Since the Court has found that Defendant is not liable to the Plaintiff for damages or other relief, judgment should be entered in favor of Defendant in this respect. In its Answer filed herein, Defendant prayed for reasonable attorneys' fees pursuant to 42 U.S.C. § 1988. If Defendant, who is the prevailing party, contends that it is entitled to an award of attorneys' fees, it is appropriate to determine this issue before a final judgment is entered. See *White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). Therefore, a time limit should be set within which Defendant may file its claim for attorneys' fees and affidavits in support thereof. If such claim is filed, a hearing may be necessary on the issue of attorneys' fees.

It is therefore ORDERED that judgment on the merits be entered in favor of the Defendant, and that the Plaintiff take nothing by her suit.

It is further ORDERED that the Defendant file its claim for attorneys fees and affidavits in support thereof within ten (10) days of the date of this Order.