Delores J. ROBBINS, Plaintiff-Appellant,

v.

WHITE–WILSON MEDICAL CLINIC,
INC., Defendant-Appellee.

No. 80–5442.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Nov. 12, 1981.

Rehearing Denied Feb. 9, 1982.

* Former Fifth Circuit case, Section 9(1) of Public
Law 96–452—October 14, 1980.

Joseph L. Hammons, Pensacola, Fla., for plaintiff-appellant.

Peter W. Zinober, Tampa, Fla., for defendant-appellee.

Before HILL, Circuit Judge, SMITH **, Judge, and HENDERSON, Circuit Judge.

JAMES C. HILL, Circuit Judge:

Plaintiff, a black female, brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* and 42 U.S.C. § 1981, alleging that the defendant clinic denied her employment on the basis of race. The district court granted plaintiff's motion for summary judgment to the extent that plaintiff had established the necessary elements of a prima facie case of employment discrimination set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Following a non-jury trial, however, the judge concluded that the defendant had established a legitimate, nondiscriminatory reason for refusing to hire plaintiff and that plaintiff had failed to prove by a preponderance of the evidence that the articulated reason was a pretext for discrimination. Accordingly, the district court entered judgment for defendant. We now reverse.

## I. Facts

Early in January 1978, Mrs. Robbins submitted an application for employment to the White-Wilson Medical Clinic, a privately owned medical clinic located in Fort Walton Beach, Florida that provides out-patient services to residents of northwest Florida and southern Alabama. Prior to the filing of Mrs. Robbins' E.E.O.C. charge, the only black employees at the clinic worked in the janitorial and housekeeping positions. At the time Mrs. Robbins applied for a position at the clinic there were no positions open; however, a job as record room clerk came open at the end of the month. Fourteen applicants, including Mrs. Robbins, were selected by Marilyn Pollard, the record room supervisor, for personal interviews. On

February 3, 1978 Mrs. Robbins was personally interviewed for the record room clerk position by Mrs. Pollard. At trial Mrs. Pollard testified that when Mrs. Robbins appeared for the interview she was surprised to learn that she was black because in five years of interviewing she had never interviewed a black applicant. At the conclusion of the interview Mrs. Robbins was advised that there were other applicants to interview and that she would be called later and told whether she had been selected. When she received no word for several days, Mrs. Robbins telephoned the clinic. Mrs. Pollard told her that another applicant had been selected and stated that Mrs. Robbins had not been chosen because of her age. Shortly afterward, Mrs. Robbins called the clinic administrator who denied that the clinic had discriminated against her because of her age (which was thirty-seven). Mrs. Robbins then spoke with Mrs. Pollard again and accused her of discrimination. At this point Mrs. Pollard informed Mrs. Robbins that she had not been selected because of her personality. After this second telephone conversation, Mrs. Pollard made a notation on the margin of Mrs. Robbins' application: "Has a bad attitude—has called and asked many questions. She is a black girl. Could cause trouble. I don't need this one."

Mrs. Robbins filed a timely charge of discrimination against the clinic with the E.E.O.C. The E.E.O.C. failed to conclude its investigation within 180 days of filing; authorization was requested and received to file a civil suit in federal court. The instant action was filed on February 7, 1979.

## II. Standard of Review

The parties dispute the standard under which this court must review the trial court's finding of no discrimination, with defendant urging application of the clearly erroneous standard and plaintiff arguing for the exercise of independent review. Because a finding of discrimination *vel non* is an ultimate fact, we must make an independent determination of the allegations of discrimination. *Joshi v. Florida State Uni-*

** Judge U.S. Court of Claims sitting by designation.

*versity*, 646 F.2d 981, 986 (5th Cir. 1981); *Thompson v. Leland Police Department*, 633 F.2d 1111, 1112 (5th Cir. 1980). As we do so, however, we are bound by the trial court's credibility determinations and findings of subsidiary facts which are not themselves clearly erroneous, examining only whether there are sufficient subsidiary facts to support the district court's conclusion on the ultimate fact. *Joshi v. Florida State University*, 646 F.2d 981, 986 (5th Cir. 1981); *Phillips v. Joint Legislative Committee on Performance and Expenditure Review of the State of Mississippi*, 637 F.2d 1014 (5th Cir. 1981); *Thompson v. Leland Police Department*, 633 F.2d 1111, 1112 (5th Cir. 1980); *East v. Romine*, 518 F.2d 332, 338–39 (5th Cir. 1975); *Causey v. Ford Motor Co.*, 516 F.2d 416, 420–21 (5th Cir. 1975).

### III. Burdens of Plaintiff and Defendant

The trial court having determined that defendant had met its burden of showing a nondiscriminatory reason and that plaintiff had not met her burden of proving pretext, we turn to the Supreme Court's pronouncements on the parties' respective burdens in a Title VII discriminatory treatment case. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established that initially the plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination.[1] Upon the plaintiff's success in proving a prima facie case, the defendant assumes the burden of articulating "some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802, 93 S.Ct. at 1824. If the defendant carries this burden, the plaintiff then has the opportunity to prove by a preponderance of the evidence that the reasons offered are in fact a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825.

Recently the Supreme Court expanded on the nature of the burden that shifts to the defendant once the plaintiff has made a prima facie case. The decision in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), altered the law in this circuit by placing on the defendant only a burden of producing a nondiscriminatory justification, not a burden of persuasion by a preponderance of the evidence, as this court had required. *See Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980).

The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant.

450 U.S. at 254, 101 S.Ct. at 1094 (footnotes omitted) (citation omitted). While lessening the burden to one of production, however, the Court also made clear that the sufficiency of the defendant's explanation must be evaluated by the extent to which it affords the plaintiff, through the clarity and specificity of the proffered reasons, a full and fair opportunity to demonstrate pretext. *Id.* at 256–57, 101 S.Ct. at 1095–96.[2]

---

1. To establish a prima facie case of racial discrimination, the plaintiff must show: "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualification, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802, 93 S.Ct. at 1824. The defendant clinic in this case does not appeal from the trial court's ruling that Mrs. Robbins had sufficiently established her prima facie case.

2. *Burdine* also altered the law in this circuit in one other respect, which is not directly relevant to the issues in this appeal. The defendant no longer needs to prove that the applicant hired was better qualified than was plaintiff, *see Falcon v. General Telephone Company of the Southwest*, 626 F.2d 369, 378 (5th Cir. 1980), but only that the chosen applicant was equally well qualified and that the decision was not based upon unlawful criteria. 450 U.S. at 258–59, 101 S.Ct. at 1096–97.

At trial the defendant attempted to show that two job qualifications were relevant to the position of record room clerk: minimal typing skills and a personality well suited to cooperative work relations with co-workers in a small working environment. As to the first, neither plaintiff nor defendant disputes that both Mrs. Robbins and the applicant chosen possessed clerical skills exceeding the level required for the job. It is the second qualification—a pleasant personality—which defendant offered as its legitimate, nondiscriminatory reason for Mrs. Robbins' rejection. For the purposes of this case, we will assume the legitimacy of this factor as a job qualification. Before determining its legal sufficiency as a rebuttal to a prima facie case of discrimination, however, we must note the subjective nature not only of this qualification but also of the job selection process in this case.

The evidence shows, and the district court found, that the entire evaluation process was restricted to the job interview. Although the record room supervisor only made recommendations to the clinic's administrator on the basis of the supervisor's interviews of the applicants, the recommendations were routinely followed. No guidelines had been established for the interviews, nor had the administrator ever sat in on a full interview. Because of the interviewer's dominant influence in the selection process, therefore, the interviewer's impression of the applicant was crucial.

We have frequently noted the dangers involved in this sort of evaluation. "[S]ubjective selection processes involving white supervisors provide a ready mechanism for racial discrimination." *Johnson v. Uncle Ben's Inc.*, 628 F.2d 419, 426 (5th Cir. 1980). *Accord, Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374, 1385 (5th Cir. 1978), *cert. denied*, 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 345 (5th Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); *Rowe v. General Motors Corp.*, 457 F.2d 348, 359 (5th Cir. 1972). The Supreme Court's requirement that "the defendant's explanation of its legitimate reasons . . . be clear and reasonably specific" provides the plaintiff with some protection against the potential for discrimination inherent in a subjective selection process involving subjective job criteria. *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096. Obviously, the more subjective the qualification sought and the more subjective the manner in which it is measured, the more difficult will be the defendant's task in meeting the burden imposed by *Burdine*.

With this in mind we review the evidence presented at trial by the defendant. The defect in Mrs. Robbins' personality—which was purportedly the basis for her rejection—was variously described as her "hostile," "intimidating," and "yucky" attitude. Although we refrain from holding either that this less than explicit account is by itself legally insufficient as an explanation or that a pleasant personality can never be a legitimate job criterion, we are compelled to conclude that the proffered reason is legally insufficient when viewed in the context of the evidence in plaintiff's prima facie case and the testimony given by Mrs. Pollard on cross-examination. Succinctly put, we believe that this is one of those "cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Id.* at 255, n.10, 101 S.Ct. at 1095 n.10.

The initial evidence in this case showed that the defendant clinic's work force of approximately 75 employees was exclusively white, with the exception of its janitorial and housekeeping departments. Plaintiff further established that, although qualified, she was rejected and that the clinic continued interviewing applicants for the position after her rejection. It is the testimony of Mrs. Pollard on cross-examination, however, that adds a critical dimension to this evidence and to the description of Mrs. Robbins' personality failings. When defendant's attorney questioned Mrs. Pollard about black employees who had been hired

after Mrs. Robbins' rejection,[3] the colloquy was as follows:

Q. What about Donna Richardson? Is she presently in your department?

A. Yes, and she's real jolly and fun to be with.

Q. And how does she relate to the other people in the department?

A. Well, she's more white than she is black. Does that answer your question?

THE COURT: Well I'm not sure I understand what you mean. Is her race black?

A. Uh-huh.

THE COURT: But she's in your thinking, more white than she is black?

A. Yeah. She's, you know, she's—her father was military, right, so if you're military, well, you know, you're not a military man but if you've been in the military you're around a lot of black and white people. You go to school with a lot of whites, right, if you're in the military, especially overseas. My kids did.

THE COURT: But you make a distinction between white people and black people in your thinking, and she's more white than black?

A. Yes, she is.

THE COURT: What does that distinction mean between black people and white people, that she's more white?

A. Well, she's just, I think of her as being very normal, just, I mean, being just like—I feel like she's just a white person. I don't think of her—you're saying is she black or white. I'm saying as far as I'm concerned she's white.

As the above testimony reveals, Mrs. Pollard, whose impression of the applicant was the controlling factor in the employment decision, had a tendency to equate pleasant personality characteristics, and particularly an ability to work well with others, with

white people. The district judge's extensive questioning of Mrs. Pollard on this point reflects his justified concern with her remarks. In spite of this apparent tendency and an explicit finding of fact that Mrs. Pollard possessed such a tendency, however, the trial judge concluded, on the basis of countervailing evidence of Mrs. Pollard's and her son's social relations with blacks, that "she possesses no racial bias or animus as such." We agree that the evidence supports these findings of subsidiary fact, but we believe that the district judge drew incorrect legal conclusions from them. Specifically, we disagree that the evidence supports the legal conclusion that racial bias played no part in the employment decision in this case.

We wish to emphasize that any findings of fact based upon a determination of Mrs. Pollard's credibility as a witness require the respect of this court unless clearly erroneous. Without discrediting Mrs. Pollard's testimony or ignoring the district judge's findings, we may conclude nevertheless as part of our independent review of the finding of the ultimate fact of discrimination *vel non* that Mrs. Robbins' rejection was racially motivated or was the result of racial stereotyping.

While personality may be a legitimate job criterion, the presence or absence of a pleasant personality cannot be measured along racial lines. In light of her tendency to associate certain characteristics with race and her notation on the plaintiff's application,[4] Mrs. Pollard's rejection of plaintiff for the job clearly appears to have been influenced by racially oriented criteria. It is under the peculiar circumstances revealed by the initial evidence and by Mrs. Pollard's testimony in this case that we reject the trial court's decision.

For these reasons, we hold that the evidence produced at trial indicates that the proffered explanation was pretextual. Ac-

---

3. Evidence at trial revealed that, after charges of race discrimination were raised by Mrs. Robbins, the clinic adopted an affirmative action program. The clinic deviated from its normal hiring procedures in an effort to attract blacks to its clerical work force.

4. "Has a bad attitude—has called and asked many questions. *She is a black girl. Could cause trouble.* I don't need this one."

cordingly, we reverse and direct that judgment be entered for plaintiff.

REVERSED and REMANDED.

SMITH, Judge, Sitting by Designation, dissenting:

I would affirm. While I agree with the majority that, in making an independent determination of the ultimate fact of discrimination *vel non,*

> we are bound by the trial court's credibility determinations and findings of subsidiary facts which are not themselves clearly erroneous, examining only whether there are sufficient subsidiary facts to support the district court's conclusion on the ultimate fact,

I respectfully disagree with the majority's conclusion that such support does not exist in the record. The subsidiary facts are more than adequate.

Because of the trial court's ruling at pretrial that plaintiff had established a prima facie case, defendant had from the outset of the trial the burden of proffering, through the introduction of admissible evidence, "some legitimate, nondiscriminatory reason for the employee's rejection." [1] Under the rule of the *McDonnell Douglas Corp.* case, defendant herein carried its burden of articulating, as a legitimate, nondiscriminatory requirement of the job, a personality well suited to cooperative work relations with co-workers in a small working environment and that it rejected Mrs. Robbins because the interviewer concluded that Mrs. Robbins did not possess this trait. [2] It was this proffered reason that plaintiff was required to discredit as a pretext for discrimination. The presumption raised by the prima facie case was rebutted by defendant's evidence, and discrimination then became an issue of fact which required plaintiff to establish that the articulated reason was not the true reason for her rejection. [3]

The record discloses that no element of race consideration existed during the interview or until the time Mrs. Robbins telephoned Mrs. Pollard about her application at a time when Mrs. Pollard was still involved in interviewing the 12 applicants. Her existing entry on the margin of Mrs. Robbins' application at that time was that the applicant was "so-so," and there is ample evidence in the record to establish that the reason for that adverse evaluation was Mrs. Robbins' personality as projected during a routine and thorough interview. Because of Mrs. Robbins' persistence, her age was given by Mrs. Pollard as a pretext, not to cover an illegal reason, but to avoid hurting Mrs. Robbins' feelings by discussing her perceived personality. Mrs. Pollard's notations including reference to Mrs. Robbins' calls, her race and the possibility that she "could cause trouble," were made after Mrs. Robbins had called the clinic three times, after she had been told of the personality evaluation, and after Mrs. Robbins accused Mrs. Pollard of discrimination and in fact threatened to file a complaint.

The record clearly establishes, and the trial judge found, that White-Wilson Medical Clinic, Inc., the *employer,* did not exclude black applicants, did not use an application containing any mention or clue as to race, and that Mrs. Robbins was the first black applicant interviewed by Mrs. Pollard in five years, notwithstanding evidence that Mrs. Pollard did not act alone in screening the applications for interviews. Also, this and other evidence in the record discloses that defendant had a policy of nondiscrimination, communicated to its supervisors, that its administrator, prior to the incident involved here, favored hiring of additional black employees, and that he took immediate charge of the situation involving Mrs. Robbins in order to determine what had happened. Further, the record shows that the successful applicant for the vacant posi-

---

**1.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

**2.** It is clear and admitted that plaintiff possessed the other requirement, qualification to perform clerical duties.

**3.** *Texas Dep't of Community Affairs v. Burdine, supra* note 1, 450 U.S. at 256, 101 S.Ct. at 1095.

tion was chosen on the basis of the two requirements stated, including a favorable view as to her personality. The same is true as to subsequent selection of a black employee who now works with Mrs. Pollard.

Mrs. Robbins could naturally suspect that race was a factor in the selection process because of the absence of black employees other than janitors and maids, and because of Mrs. Pollard's reference to age. Accordingly, she was entitled to a fair trial on the question whether defendant's failure to select her was based on racial bias. But defendant also was entitled to a fair trial and the record establishes that the trial was fair to both parties.

This court must certainly guard against a nibbling away of its record of firm and judicious efforts to support the elimination of illegal discrimination; but this case comes to us essentially as one involving standard of review, and not civil rights. This case is not an appropriate one for the court to use to emphasize its continuing vigilance in the latter area; not with these facts; not with these parties; not with an unfairly imposed penalty on this clinic.

This appeal is based primarily if not entirely on the issue of alleged racial bias or animus on the part of Mrs. Pollard. The evidence does not support such a finding. This would not even be a close case were it not for Mrs. Pollard's outdated, unacceptable, stereotypical descriptions, and her ingenuous inability to recognize them as such. But Title VII is not intended to and in any event could not possibly eliminate all of the stereotypical expressions in an imperfect world; its purpose is to assure that the *reason* for denial is not bias or animus. Mrs. Pollard seems obviously incapable of speaking in language which meets the test of modern race-free expression; so much so that the trial judge personally examined her closely and in detail on the question of discrimination on the basis of bias and prejudice. Her full testimony clearly showed that she had none; therefore none can be imputed to defendant. Plaintiff had her day in court, and the trial judge exercised his duty of close scrutiny and found that

race played no part in Mrs. Pollard's decision to reject her. On the facts of this record, we should not substitute a contrary belief for the conclusion of the judge who conducted the trial. His decision is supported by the evidence. It should not be reversed. I respectfully dissent.