Frances McCARTHNEY,
Plaintiff-Appellant,

v.

GRIFFIN–SPALDING COUNTY
BOARD OF EDUCATION, et
al., Defendants-Appellees.

No. 85–8365.

United States Court of Appeals,
Eleventh Circuit.

June 25, 1986.
Corrected.

Richard L. Collier, Griffin, Ga., for defendants-appellees.

Theodore G. Frankel, Marilyn S. Bright, Atlanta, Ga., for plaintiff-appellant.

Before GODBOLD, Chief Judge, ANDERSON, Circuit Judge, and ATKINS *, Senior District Judge.

GOLDBOLD, Chief Judge:

Frances McCarthney, a white female, filed this Title VII suit against the Griffin-Spalding County Board of Education ("Griffin") and individuals associated with Griffin, alleging that the defendants had failed to promote her to an administrative position because she was a woman.[1] The district court, after a nonjury trial, entered a judgment in favor of all defendants. McCarthney appealed. We affirm.

The district court found the following. McCarthney began teaching at Griffin in 1975. She had received her B.S. in elementary education from Georgia State College for Women. In 1978 she received a master's degree in education administration from the University of Georgia and an AS–5 certification from the State of Georgia (any person filling an administrative role in the Georgia school system is required to have such certification by January 31 of the school year). Two years later McCarthney received her master's degree in middle grades from the University of Georgia, and she is currently working toward her doctorate at that institution.

In 1979 McCarthney contacted Dr. Charles Green, the school superintendent, and informed him that she wished to be promoted to an administrative position within the school district. Dr. Green talked with her for about 30 minutes and told her to place her name with Dr. Jones for the list of candidates for administrative positions. In the summer of the same year McCarthney learned of two vacancies in the school district, a principalship at an elementary school and an assistant principalship at a junior high. She applied for both positions. Both positions eventually were filled by men. McCarthney then filed a charge with the EEOC asserting that she had been passed over because she was a woman.

Before the district court Dr. Green testified as to the factors he considers in filling administrative vacancies. In making these determinations he examines objective and subjective factors. The objective criteria include that the candidate have a bachelor's degree and proper state certification. The subjective criteria include intangibles such as leadership ability and a willingness to be cooperative and flexible. In making his determination Dr. Green believes that an applicant should have a recommendation from his or her supervisor. He testified that these recommendations play a significant role in his final decisions. McCarthney was not told of this preference for recommendations until after she filed her charge with the EEOC. There is no written policy of the school system requiring a recommendation for appointment to an administrative position.

The two men who were hired for the 1979 vacancies met the minimum objective standards. Both men also had received recommendations from their supervisors. Although Dr. Green solicited recommendations for McCarthney, no one was willing to give her one.

The district court found that Dr. Green believed that McCarthney lacks "interpersonal skills which are necessary for an administrator to have," and that "she is perceived as inflexible, overly aggressive,

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. She had received a right to sue letter from EEOC.

and abrasive." R. 252. It found that the reason she failed to be promoted was "her intransigence and the lack of a recommendation," that she would not have been appointed to any administrative position had she been a man, and that the defendants did not discriminate against her because of her gender. R. 253. Finally, it held that defendants had not retaliated against McCarthney for filing the EEOC charge. *Id.*

After making these factual findings the district court proceeded to analyze the case under the *McDonnell Douglas* framework.[2] It held that McCarthney had established a prima facie case,[3] that the school board had articulated a legitimate, nondiscriminatory reason for not promoting her, and that she had failed to establish her case by a preponderance of the evidence. It concluded, "The credible evidence indicated that [McCarthney's] personality was the controlling reason for the defendants' failure to hire her." R. 255. The court then entered a judgment in favor of the defendants.

## DISCUSSION

■ The district court's finding that McCarthney would not have been hired even if she were a man is not clearly erroneous. "[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *U.S. v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Here, Dr. Green's testimony provides sufficient evidence to support the district court's finding. He explained that in fill-

ing an administrative position candidates were judged by objective and subjective criteria. The objective criteria were possession of a bachelor's degree and obtaining the proper state certification. TR 164–65. Both men hired for the 1979 positions satisfied these requirements. TR 172, 173–74.

Dr. Green identified two subjective factors he relied upon in filling administrative positions. First, the applicant had to be an excellent teacher. TR 167. Although Dr. Green did not elaborate on this factor, its significance to being a good administrator is self-evident. Second, the applicant had to relate well with others. TR 167. Dr. Green explained why this quality was necessary to being a good administrator: "[I]n a particular school you may have 30, 40, 60, 100 teachers that you have to relate on a daily basis, plus you have anywhere in our system from 250 students to 2,100 students depending ... on the school, and then all these people have ... parents and grandparents and other folks that we relate to." *Id.* Dr. Green testified that this factor was especially important for the open principalship in 1979 because the parents in that district took a very active role monitoring that school. TR 169.

In determining whether an applicant was the best qualified for a position under these criteria, Dr. Green solicited recommendations from the principal of the school where the applicant presently worked. TR 165. Both men hired in 1979 received a recommendation from their principal. TR 170, 173. McCarthney's principal did not recommend her. TR 173. After explaining these general requirements and how they applied to the 1979 positions, Dr. Green stated that

---

2. Under this framework the plaintiff must carry the initial burden by establishing a prima facie case. This may be done by showing (1) plaintiff belongs to a group protected by Title VII; (2) plaintiff was qualified for the job applied for; (3) plaintiff did not receive the job; and (4) the job remained open and the employer continued to seek applicants with the plaintiff's qualifications. After the plaintiff makes such a showing the burden falls to the defendant to articulate a legitimate, nondiscriminatory reason for not hiring the plaintiff. If the defendant carries this burden, the plaintiff still bears the ultimate burden of proof. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801–05, 93 S.Ct. 1817, 1823–26, 36 L.Ed.2d 668 (1973).

3. Defendants do not challenge this conclusion.

McCarthney's sex played no role in his decisionmaking process. TR 171–173.

This testimony amply supports the district court's finding that McCarthney would not have been promoted even if she were a man.

■ The Supreme Court in *Anderson v. Bessemer City*, 470 U.S. 564, ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518, 529 (1985), has cautioned appellate courts that when a district court's factual finding rests on the credibility of witnesses, such findings "demand[ ] even greater deference" than do other factual findings. These findings are not insulated from review. For example, such findings should be set aside where the witness's testimony is internally inconsistent or other objective evidence calls the witness's story into question. *Id.* Dr. Green's testimony is internally consistent; none of his testimony indicates that he failed to promote McCarthney because of her sex. McCarthney questions Dr. Green's testimony, asserting first that the evidence shows that she was more qualified than the men who were promoted, and second that Dr. Green's use of recommendations in reaching his decision demonstrates a discriminatory intent. Even assuming that the evidence demonstrated McCarthney was the most qualified person for the available positions, this does not of itself refute Dr. Green's testimony that McCarthney's gender played no role in his decision. Title VII does not require an employer to hire or promote the most qualified applicant; it only requires that the employer make such decisions without regard to race, sex, religion, color, or national origin. *See Gilchrist v. Bolger*, 733 F.2d 1551, 1553 (11th Cir.1984); *Garcia v. Gloor*, 618 F.2d 264, 269 (5th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981). Although failure to hire the most qualified applicant may be circumstantial evidence of discrimination, standing alone it does not render the district court's decision to credit Dr. Green's testimony clearly erroneous.

■ Dr. Green's reliance on recommendations does not require reversal. Although Dr. Green admits that such letters play an important role in his decisionmaking process, he never publicized this requirement nor did he inform McCarthney of its existence when she applied for the vacancies in 1979. Although the use of unpublished standards may be circumstantial evidence of an intent to discriminate, such procedures are not prohibited by Title VII. "Failure to explain decisions to employees may prove bad management but it does not necessarily prove discrimination." *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1499 (11th Cir.1985). "Provided that the promotion decision was not based ... on ... sex, [the defendant] has not violated Title VII." *Gilchrist v. Bolger*, 733 F.2d at 1553. Here, although the procedure may be used to discriminate against women, there is no evidence that it was actually used in such a fashion. This unpublicized use of recommendations, standing by itself or considered with the alleged failure to hire the most qualified person, does not make the district court's credibility determination clearly erroneous.

■ The use of recommendations does not, because they are subjective, require us automatically to invalidate the school system's promotion procedure. In *Harris v. Birmingham Board of Education*, 712 F.2d 1377 (11th Cir.1983), *Lee v. Conecuh County Board of Education*, 634 F.2d 959 (5th Cir.1981), and *Rowe v. General Motors Corp.*, 457 F.2d 348 (5th Cir.1972), all relied on by McCarthney, the court only held that use of subjective procedures can be employed as evidence of discrimination. In each case the court also relied on other evidence supporting the existence of discrimination.

■ After making its factual findings, the district court analyzed these facts under *McDonnell Douglas*. Its failure to also analyze the evidence under the direct-evidence-of-discrimination standard is not

reversible error. In disparate treatment cases *McDonnell Douglas* is applicable where the plaintiff attempts to prove her claim through circumstantial evidence of discrimination. *Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1556 (11th Cir. 1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). But, "if the evidence consists of direct testimony that the defendant acted with a discriminatory motive, and the trier of fact accepts this testimony, the ultimate issue of discrimination is proved." *Id.* at 1557. Once a plaintiff establishes by direct evidence that an employer acted with a discriminatory intent, "the employer may escape liability only by showing that the same decision would have been reached absent the illegal motive." *Conner v. Fort Gordon Bus Co.,* 761 F.2d 1495, 1498 n. 4 (11th Cir.1985); *see also Thompkins v. Morris Brown College,* 752 F.2d 558, 563 (11th Cir.1985); *Miles v. M.N.C. Corp.,* 750 F.2d 867, 857–76 (11th Cir.1985). Thus, even if McCarthney presented direct evidence of discrimination,[4] the district court's finding that she would not have been promoted if she were a man would present defendants with a complete defense.

■ If the defendants establish an absolute defense to a direct showing of discriminatory motive, they cannot be held liable under *McDonnell Douglas,* which relies on the use of circumstantial evidence to prove discriminatory intent. Because the plaintiff's prima facie case only raises an inference of discriminatory intent, *see Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), as opposed to proving it in a direct evidence case, the employer need only articulate (not prove) a legitimate, nondiscriminatory reason for its actions. Then the burden falls on the plaintiff to prove that the action complained of was undertaken for discriminatory reasons. *Id.* at 254–56, 101 S.Ct. at 1094–95. Thus, a defendant's burden after a plaintiff establishes a prima facie case under *McDonnell Douglas* is less than in cases where direct evidence establishes a discriminatory motive. *See Lee v. Russell County Board of Education,* 684 F.2d 769, 774 (11th Cir.1982). Hence, if the defendants could have successfully defended against a showing that they acted with a discriminatory motive, they cannot be held liable on a claim predicated on *McDonnell Douglas.*

■ The factual finding of no retaliation is not clearly erroneous. Although Dr. Green testified that he met with McCarthney concerning her EEOC charge, he also explained that these meetings were an effort to resolve the matter satisfactorily without resort to formal proceedings. TR. 202. Nothing in Title VII prevents an employer from attempting to solve disputes amicably. Indeed, Title VII prefers informal settlement of disputes. Section 706(b) requires that if the EEOC has reason to believe a charge of discrimination is well founded, it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *See also Culpepper v. Reynolds Metals Co.,* 421 F.2d 888, 891 (5th Cir.1970) (Tuttle, J.) ("[T]he central theme of Title VII is 'private settlement' as an effective end to employment discrimination."). The only evidence contradicting Dr. Green's testimony on the conciliatory purpose of these meetings is McCarthney's testimony that Dr. Green told her that this suit was "hanging over his head" and making the school board look bad. The district court, faced with two competing versions of the facts, chose to believe the testimony of Dr. Green. We cannot upset that choice.

AFFIRMED.

**4.** McCarthney offered little evidence of direct discrimination; the only evidence she produced is a statement by a school official, who when asked by McCarthney whether a woman would be appointed to one of the 1979 openings replied that it "doesn't look too good." The testimony of this official recounted a different version. TR 218–19.