Kenneth C. FERRON, Plaintiff,

v.

Togo D. WEST, in his official capacity as Secretary of the Army, Defendant.

No. CV 497–352.

United States District Court,
S.D. Georgia,
Savannah Division.

June 8, 1998.

Zena Elizabeth McClain, Savannah, GA, for Kenneth C. Ferron.

Kenneth C. Ferron, Ravenel, SC, pro se.

Melissa Stebbins Mundell, Savannah, GA, for Togo D. West, Jr.

## ORDER

EDENFIELD, District Judge.

Plaintiff Kenneth C. Ferron, an African American, brought this Title VII, employment discrimination action against the United States Army (the Army).[1] A civilian employee, Ferron alleges, *inter alia,* that the

---

1. Plaintiff originally identified the defendant as "Togo D. West, Jr., Secretary of the Army, Fort Stewart, Georgia." He later conceded proper nomenclature, *see* doc. # 13 at 19, so the above

Army denied him a promotion at its Fort Stewart Fire Department because of his race. Denying all allegations, the Army moves for judgment on the pleadings and for summary judgment.

## I. BACKGROUND

Ferron was employed as a Charleston, S.C., firefighter from 1978 until 1982, then as a Charleston naval base firefighter from 1982 until an early 1990s reduction in force. Complaint ¶¶ 9–11. At the base he began under "government service" pay grade 4 (GS–4), and exited under GS–6. Id. ¶ 10. He left when the base closed, and in March, 1994, was selected for a firefighter's position at Fort Stewart, Georgia. Id. ¶ 11. Fort Stewart employed him at the GS–5 grade—the pay grade he had held with the Navy in 1983. Id. ¶ 12.

Ferron sought promotion to GS–6 and 7 positions in January, 1996. Id. ¶ 16. He was the only black applicant for the vacant spots, which were ultimately filled by white employees. Id. ¶ 17–18. After the Army denied his applications, he brought this action. He insists that he is equally or better qualified than the white men who got the jobs. Id. ¶ 17–18. Consequently, he maintains that the Army refused to promote him because of his race. Id. ¶ 26. The Army also did so, he further contends, out of retaliation for a discrimination complaint that he had filed against the Navy in 1993. Doc. # 8, exh. 2 at 7.

## II. ANALYSIS

### A. Ferron's Tort, § 1981, and Punitive Damages Claims

 Under F.R.Civ.P. 12(b)(1) & (6) & (c), The Army moves for dismissal of, or

judgment on the pleadings[2] against, Ferron's Federal Tort Claims Act (FTCA), 42 U.S.C. § 1981 and punitive damages claims. After retaining counsel, Ferron conceded that some of his claims (i.e., tort, § 1981, and punitive damages) are legally unfounded. Doc. # 13 at 16–19. However, he asks that these claims be dismissed without, rather than with, prejudice. Id. He also requests that the statute of limitations on his tort claim be tolled so that he may re-file it in compliance with the FTCA's exhaustion requirements. Alternatively, he moves the Court to waive those exhaustion requirements. Id. at 17.

Litigation doesn't work that way, not even for those who initially proceed pro se. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.1989) ("once a pro se ... litigant is in court, he is subject to the relevant law and rules of court...."). After an Answer has been filed, a federal court plaintiff cannot simply "withdraw" his claims to avoid an adverse judgment on the merits. Ferron's § 1981 and punitive damages claims therefore must be dismissed with prejudice. Rule 12(b), (c).

Because Ferron failed to satisfy the FTCA's administrative exhaustion requirements and in the meantime let the statute of limitations period expire, his FTCA-based claims, too, must be dismissed with prejudice. In that respect, he refers this Court to no legally supportable, equitable tolling grounds, much less any convincing precedent authorizing an exhaustion-waiver.

### B. Plaintiff's Retaliation Claim[3]

 To establish a prima facie case of retaliatory treatment under Title VII, Ferron must demonstrate that (1) he was en-

---

caption has been amended accordingly. All subsequent filings shall conform.

**2.** "Judgment on the pleadings is appropriate when material facts are not in dispute and judgment can be rendered by looking at the substance of the pleadings and any judicially noticed facts." Bankers Ins. v. Fla. Residential Prop. & Cas. Joint Underwriting, 137 F.3d 1293, 1295 (11th Cir.1998); see also Ortega v. Christian, 85

F.3d 1521, 1524 (11th Cir.1996) (to grant judgment on the pleadings, the court must "accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party").

**3.** This Court applies the summary judgment standards exhaustively detailed in Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115–17 (11th Cir.1993)

gaged in a statutorily protected activity; (2) he suffered adverse employment action; and (3) the adverse employment action was causally related to the protected activity. *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1388 (11th Cir.1998). In establishing the causal connection, plaintiff must show more than a temporal proximity between the alleged protected activity and the adverse employment decision. *Wrenn v. Ledbetter,* 697 F.Supp. 483, 486 (N.D.Ga. 1988), *aff'd,* 880 F.2d 420 (11th Cir.1989); *Douglas v. Dabney S. Lancaster Community College,* 990 F.Supp. 447, 464 (W.D.Va.1997).

■ Assuming, *arguendo,* that Ferron satisfies the first two elements, he cannot make the required showing of a causal link between his nonselection for promotion and his previously filed discrimination complaint. He does not dispute that he filed his discrimination complaint against the Navy three years before the Army denied his promotion request. And, although the decisionmaker here may have known of Ferron's discrimination claim against the Navy before denying him his desired promotion, that fact alone is legally insufficient (to hold otherwise would in effect impose strict liability, rendering the decisionmaker's explanation superfluous). For that matter, Ferron proffered only speculative evidence at a Department of Defense Office of Complaint Investigations hearing:

Q: Okay. Do you know whether or not Mr. VanderArk, at the time that he made these selections, was aware that you had previously participated in [a discrimination proceeding] at Charleston, South Carolina?

A: Sir, I can't say that I know that. I don't know that. *I wasn't saying that Mr. VanderArk personally was doing this against me as far as the [prior discrimination complaint].*

\* \* \* \* \* \*

Q: Okay. So you are saying that you don't know for certain whether Mr. VanderArk knew, but certainly someone at Charleston told you that it's a strong possibility—

A: There's a very strong possibility. And then after that, there's been black lists where supervisors have kept lists in their office on people, notes if they made a mistake or if they did something wrong, that would follow them and hold them back from promotion.

Q: Okay. So you feel that you very possibly are a victim of the same type of treatment?

A: Yes, sir.

(doc. # 8, exh. 2 at 7–9) (emphasis added).

■ Of course, "mere inferences, conjecture, speculation or suspicion are insufficient to establish a material fact upon which to base the denial of summary judgment." *Huggins v. Teamsters Local 312,* 585 F.Supp. 148, 150–51 (E.D.Pa.1984); 11 MOORE'S FED. PRAC. § 56.14[1][d] (1997). Ferron's vague suspicion that his prior discrimination complaint had somehow "followed him" and placed him on a "black list" does not constitute the competent evidence he needs to avoid summary judgment on this claim.

### C. Plaintiff's Race Discrimination Claim

Since Ferron relies upon circumstantial evidence to prove his Title VII claim, he must establish a prima facie case by proving that: (i) he belongs to a racial minority; (ii) he applied for and was qualified for a promotion for which the employer was seeking applicants; (iii) despite his qualifications, he was rejected; and (iv) after his rejection, the position went to an equally or less qualified person who was not a member of a protected class. *See Jones v. Bessemer Carraway Medical Ctr.,* 137 F.3d 1306, 1310–11 (11th Cir.1998); *see also Arrington v. Cobb County,* 139 F.3d 865, 873 (11th Cir.1998).

Establishment of a prima facie case creates a presumption of discrimination, which defendant may rebut by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Jones,* 137 F.3d

and *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d

739, 742–43 (11th Cir.1996).

at 1310. At that point the plaintiff must show that the reason is simply a pretext for discrimination. *Id.* At all times, however, Ferron must meet the ultimate burden by persuading the Court that he has been the victim of intentional discrimination. *Id.*

The Army concedes that Ferron has established a prima facie case. Doc. # 7 at 18. To rebut the resulting presumption of racial discrimination, the Army points to the reasons its hiring decision-maker (K.H.VanderArk) supplied for his decision. While VanderArk conceded that Ferron qualified at a threshold level, he found some of the other applicants better qualified. He based this finding primarily upon observational evaluations provided by the applicants' supervisors. Doc. # 8, exh. 2 at 16–19, exh. 5 at 40–41.

None of the supervisors who were asked to evaluate the applicants recommended Ferron. They complained that he: frequently sat "around doing nothing," doc. # 8, exh. 8 ¶ 7; "was not as motivated as the candidates that I did recommend," *id.* ¶ 6; "[was] a follower; somebody who always needed guidance and supervision," doc. # 8, exh. 9 ¶ 7, and was "not as familiar with the geography of the installation or the operation of the emergency equipment, and the overall operations of the Fire Department as the candidates that [were recommended]." Doc. # 8, exh. 10 ¶ 7. Ferron, according to one supervisor, "had a lot less initiative than the [other] candidates that I recommended...." Doc. # 8, exh. 8 ¶ 7.

Based upon those assessments, as well as his own opinion, *see* doc. # 8, exh. 2 at 25 ("I just didn't feel that Mr. Ferron [was] ready to take over a leadership position within the department at [that] point in time"), VanderArk did not select Ferron for any of the GS–6 or GS–7 vacancies. He disclaims any racial motivation in selecting 5 white men for the positions. Doc. # 8, exh. 2 at 16, 24, exh. 5 at 41.

■ Ferron fails to overcome defendant's reasons and thus show pretext. *Jones,* 137

F.3d at 1310; *Arrington,* 139 F.3d at 875. He characterizes VanderArk's justification as "inconsistent, vague, and facially not worthy of credence," doc. # 13 at 10, and emphasizes that he was denied promotion for 13 positions,[4] each time being assured that he was "highly qualified yet not selected." Doc. # 13 at 11. And, he insists that his schooling, training, and experience surpass those of some of the white applicants who were promoted, despite VanderArk's opinion that they were roughly equal. *Id.*

These arguments must fail, however, because the record supports VanderArk's assessment of Ferron as less qualified than the other applicants. For example, while it is true that Ferron had expertise in ship-board firefighting, as well as an Associates Degree in Fire Science, it also is true that such were not required for the GS–6 or GS–7 positions. Doc. # 8, exh. 5 at 38–40, 43–44.

■ Similarly, Ferron's claim that he had more years of federal employment than all but one of the other applicants for the GS–6 positions, *see* Complaint ¶ 17; doc. # 13 ¶ 21, adds nothing. Time on the job does not always translate into a net performance improvement—which is one of the reasons why general allegations of superior qualifications are legally meaningless. *See Ost v. West Suburban Travelers Limousine, Inc.,* 88 F.3d 435, 441 (7th Cir.1996) ("[A] plaintiff's own opinions about [his] work performance or qualifications do not sufficiently cast doubt on the legitimacy of [his] employer's proffered reasons for its employment actions"); *see also Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir.1997) ("The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance"); *McCarthney v. Griffin–Spalding County Bd. of Educ.,* 791 F.2d 1549, 1552 (11th Cir.1986) ("Title VII does not require an employer to hire or promote the most qualified applicant; it only requires that the employer make such decisions without regard to race, sex, religion, color, or national origin").

4. Only the January, 1996 GS–6 and GS–7 nonse- lections are at issue here.

Ferron next points to VanderArk's "testimony" that Fort Stewart operated as a "'good old boy', 'racially motivated', 'system'" (doc. # 13 ¶ 37, pp. 14–15) as "conclusive" evidence upon which the Court should infer discriminatory hiring practices. However, in quoting VanderArk's statements (given at a DOD hearing, doc. # 8, exh. 2, and before an EEOC Administrative Judge, doc. # 8, exh. 5), Ferron grossly misrepresents VanderArk's actual testimony, in violation of F.R.Civ.P. 11.

According to plaintiff, for example, "VanderArk testified that... 'he *has* inherited the good old boy syndrome at Fort Stewart,'" doc. # 13 ¶ 36 (emphasis added), and "that at Fort Stewart things are 'buddy-buddy', 'racially motivated', and it was a system." *Id.* ¶ 37 (emphasis added). In fact, VanderArk testified that he *may have* inherited something akin to that:

A Well, I've always—there's always been a better balance of hiring and practices at Hunter. I inherited, I don't know what at Fort Stewart. I don't know if what [Ferron] is saying was true, was the good old boy syndrome—

MR. FERRON: It is.

A —buddy-buddy or was it racially motivated in those days, but I've only been there a year. I can't fix it overnight. It's a system.

MR. FERRON: But it's not right.

A. But until—I'm not saying it's right or wrong. I'm just telling you what I inherited, you know. And until the openings come and we can pick and choose and try to get those numbers up and look at people, but still, I don't hire them because they're black. I hire them because I think they're very qualified people.

Doc. # 8, exh. 2 at 40. VanderArk emphasized:

Well, just for the record, I'm not a good old boy. I'm not from Georgia. I'm from

Virginia and made my way here by way of Alaska. So I'm not family, kin, nor one of their good old boys out there. So that has nothing to do with it on what I select.

*Id.* at 43.

In an attempt to create an illusion of admitted racial discrimination by VanderArk, Ferron's counsel has imperiled her own credibility with this Court. VanderArk's entire testimony shows that he was claiming an inability to either confirm or deny Ferron's allegations about past employment practices at Fort Stewart. Regardless of how the installation had operated in the past, VanderArk was emphatic about his impartiality and determination to promote the most qualified applicants. To paraphrase these sentiments in quotations and remove their true meaning is unacceptable.

Ferron also relies upon statistical evidence, asserting that only 3 of the 45 employees at Fort Stewart were minorities. Doc. # 13 at 15. He calls the Court's attention to the disparity in the percentage of minority employees in the Fort's Department of Public Works, which was 16.81%, compared to the installation's overall minority representation of 29%. *Id.* Lastly, Ferron states that of the 15 promotions that were made by VanderArk during his tenure at Fort Stewart, all of them were given to white men.[5] *Id.*

Statistics presented without an analytical foundation are "virtually meaningless." *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 952 (11th Cir.1991). As the Eleventh Circuit recently confirmed, "statistics alone cannot make a case of individual disparate treatment." *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 645 n. 5 (11th Cir.1998) (quotes and cite omitted). An individual plaintiff must point to some specific instance of discrimination in order to be entitled to a remedy. *Id.; Vincent v. Wells Fargo Guard Services, Inc. of Fla.,* 3 F.Supp.2d 1405, 1415 (S.D.Fla.1998).

---

5. Ferron noticeably fails to mention that VanderArk had hired or promoted five black employees at Hunter Army Airfield during the six years

prior to the challenged decision in this case. Doc. # 8, exh. 2 at 39; exh. 5 at 33–34.

Thus, without more evidence indicating a connection between these numbers, defendant's promotion and hiring practices, and Ferron's individual circumstances, this evidence simply fails to support plaintiff's burden at this stage. *See Gadson v. Concord Hosp.*, 966 F.2d 32, 35 (1st Cir.1992).

Ferron further alleges that VanderArk intentionally disregarded the affirmative action policy promulgated by the Fort Stewart EEO office. Such disregard, he states, is "significant evidence in a Title VII suit against the employer." Doc. # 13 at 15 (citing *Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 415 (7th Cir.1988)). This argument also fails because the affirmative action plan was not violated. The plan awards the job to the applicant from the favored group only in the event of a tie or near tie. But here there was no tie. Again, Ferron has not effectively rebutted defendant's evidence that he was not as qualified for the promotion as those who received it.

 Finally, Ferron maintains that subjective evaluations—as were employed here—mask racial preferences, providing "a ready mechanism for discrimination." Doc. # 13 at 11–12, 13. To be sure, plaintiffs have "some protection against the potential for discrimination inherent in a subjective evaluation process involving subjective job criteria." *Robbins v. White–Wilson Medical Clinic, Inc.*, 660 F.2d 1064 (5th Cir. Unit B 1981) (*Robbins I*) (reversing district court's judgment for employer), *vacated and remanded*, 456 U.S. 969, 102 S.Ct. 2229, 72 L.Ed.2d 842 (1982), *post-remand*, 682 F.2d 503 (5th Cir. Unit B 1982) (affirming judgment for employer) (*Robbins II*).*

Furthermore, the Eleventh Circuit has held that, where a job's hiring or promotion criteria are "incapable of objective evalua-tion," they "cannot be relied upon by an employer seeking to defeat the plaintiff's prima facie case by showing that the plaintiff is less qualified than the applicant chosen for the promotion." *Carter*, 132 F.3d at 644 ("requirements such as 'initiative and judgment capabilities' and the ability 'to relate to people in a manner to win confidence and establish support' are incapable of objective evaluation.").

*Carter* cannot be reconciled with prior precedent. In *Robbins*, a hiring evaluator with an admitted tendency to equate pleasant personality characteristics with white people based her rejection of plaintiff (a black female) on her "'hostile,' 'intimidating,' and 'yucky' attitude." *Robbins I*, 660 F.2d at 1067. The reviewer further noted on plaintiff's application: "Has a bad attitude—has called and asked many questions. *She is a black girl. Could cause trouble. I don't need this one.*" *Id.* at 1068, n. 4 (emphasis original). And, she justified a later (black) hire because that individual was "more white than black." *Id.* at 1068.[6]

The Fifth Circuit originally reversed as "clearly erroneous" the district court's finding that the evaluator's rejection of the plaintiff was not pretextual. The evidence, it concluded, showed that the evaluator was *"clearly influenced by racial criteria."* *Id.* (emphasis added). On remand from the Supreme Court, however, the same panel affirmed the district court based on its application of a new standard of review for findings of fact. *Robbins II*, 682 F.2d at 503. However, even though it had previously highlighted detailed testimony showing the employer's decision to be a pretext for racial discrimination, *see Robbins I*, 660 F.2d at 1067–69, in *Robbins II* it did not detail why, under the new review standard, such was now insuffi-

---

* All former Fifth Circuit "Unit B" decisions are binding on this Court. *See* Matter of Int'l Horizons, Inc., 689 F.2d 996, 1004 n. 17 (11th Cir. 1982).

**6.** The district judge further inquired:
THE COURT: What does that distinction mean between black people and white people, that she's more white?

A. Well, she's just, I think of her as being very normal, just, I mean, being just like—I feel like she's just a white person. I don't think of her—you're saying is she black or white. I'm saying as far as I'm concerned she's white. 660 F.2d at 1068.

cient to support the plaintiff's claim.[7] In any event, the decision-maker in that case clearly employed the most subjective of hiring criteria ("pleasantness") and obviously was able to defeat the plaintiff's prima facie case, despite the *Carter* court's conclusion that it cannot be done.

The same analytical wrinkle surfaces in *McCarthney v. Griffin–Spalding County Bd. of Educ.,* 791 F.2d 1549, 1550–51 (11th Cir. 1986), a gender-discrimination case in which the Eleventh Circuit upheld a bench-trial judgment that accepted an employer's gender-neutral reasons for failing to promote a female to an administrative position. Although McCarthney satisfied the objective requirements for the job, she (a) failed to obtain a positive recommendation from her supervisor; and (b) "lack[ed] 'interpersonal skills which are necessary for an administrator to have,' [and was] 'perceived as inflexible, overly aggressive, and abrasive.'" Indeed, McCarthney's "personality was the controlling reason for the defendants' failure to hire her." *Id.* at 1551. In affirming the judgment, the Eleventh Circuit necessarily concluded that such was enough to sustain the employer's burden.

While it is true that *Carter* involved a summary judgment while *Robbins* and *McCarthney* involved bench trials and thus factfinding, nevertheless a conflict exists. *Carter* held that subjective hiring criteria like "initiative" and "judgment capabilities" simply "cannot be relied upon by an employer seeking to defeat the plaintiff's prima facie case by showing that the plaintiff is less qualified than the applicant chosen for the promotion." 132 F.3d at 644. If that is a valid statement of law, then how did the employers in *Robbins* and *McCarthney* defeat their respective plaintiffs' prima facie cases?

Indeed, how would the large variety of employers who must necessarily rely upon personality-trait assessments (especially for promoting employees to supervisory positions in the public safety sector, where deficient leadership skills can result in immediate, adverse impact upon the public) ever be able to defeat a plaintiff's prima facie case? Under *Carter*'s reasoning, they could not, resulting in a "strict liability" result. *Robbins* and *McCarthney* set the benchmark for what an employer can show to defeat a plaintiff's prima facie case; *Carter* took it away.

Yet, *Robbins* and *McCarthney* have never been overruled. To the extent *Carter* conflicts, it cannot be followed. *See Local Union 48 Sheet Metal v. S.L. Pappas & Co.,* 106 F.3d 970 (11th Cir.1997) ("where there is a conflict between panel decisions within this circuit, the earlier decision is binding until the court decides the issue *en banc*"); *see also U.S. v. Rodriguez–Velasquez,* 132 F.3d 698, 698 n. 1 (11th Cir.1998) (but courts should try and reconcile the two).

The defendant in this case has offered a legitimate reason for resorting to the use of subjective evaluations: to separate the merely from the more qualified applicants. Doc. # 7 at 19. Ferron's supervisors' evaluations state in race-neutral terms their perceptions of his relevant failings, e.g.: unmotivated (doc. # 8, exh. 8 ¶ 6–7), always needs supervision (doc. # 8, exh. 9 ¶ 7), and unfamiliar with important equipment (doc. # 8, exh. 10 ¶ 7).[8] Admittedly some of these reasons are subjective, or invoke subjective criteria, but binding case law requires that something more—evidently, other corroborating evidence—be shown.[9]

---

**7.** A possible explanation may be found in the dissent to *Robbins I,* 660 F.2d at 1069–70 (contending that the district judge was entitled to find that the evaluator, despite her politically incorrect expression—she in effect equated "white" only with being able to blend in—was not driven by discriminatory animus imputable to the employer).

**8.** VanderArk stressed the public safety factor in making his decision. *See* doc. # 8, exh. 2 at 24 ("[p]eople's lives hinge, as far as I'm concerned, on these selections. And I base it solely on what I feel is the best suited person to handle that given position").

**9.** *Robbins I,* ironically, would have set a useful analytical example of "something more" (i.e., application of only subjective criteria plus evi-

Ferron has failed to do that. He has failed to rebut the stated reasons for his non-promotion, or otherwise show why they might be irrelevant to his application. He simply continues to insist that he is more objectively qualified than the other applicants. He has thus failed to rebut the defendant's statements with anything more than conclusory allegations of discrimination. Of course, "conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [defendant] has offered such extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.1987); *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2nd Cir.1985) (conclusory allegations of discrimination are insufficient to raise inference of pretext and thereby defeat a summary judgment motion).

"If an employer selects the person it believes is best qualified, an argument of pretext ordinarily will fail." *Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 527 (11th Cir.1983). "[T]he court's responsibility [is] not to second guess the wisdom of [the employer's] reasoning, but to determine if the reasons given were merely a cover for discriminatory intent." *Brown*, 939 F.2d at 951. Ferron has failed to rebut the Army's showing that it denied him a promotion on the merits, and not because of his race.

### D. Rule 11 Sanctions

A court may, upon motion or its own initiative, impose an appropriate Rule 11 sanction upon lawyers who sign misleading pleadings. As set forth *supra*, the brief authored by plaintiff's counsel crossed the line from zealous advocacy to distortion by omission. The Court strictly enforces its zero-tolerance policy against frivolous and misleading filings.

Before a court imposes a sanction for a Rule 11 violation, however, "[t]he ac-cused must be given an opportunity to respond, orally or in writing as may be appropriate, to the invocation of Rule 11 and to justify his or her actions." *Donaldson v. Clark* 819 F.2d 1551, 1560 (11th Cir.1987). That is not necessary here because the Court is letting counsel off with a strong warning.

### III. CONCLUSION

Defendant Togo D. West's motion for summary judgment on plaintiff's Title VII claims (race/reprisal) (doc. # 7) is *GRANTED*. Defendant's motion to dismiss plaintiff's remaining claims pursuant to Rule 12(b)(1), (6) and (c) (doc. # 7) is also *GRANTED*. Plaintiff's Complaint is *DISMISSED WITH PREJUDICE*. Subsequent pleadings shall conform as set forth in note 1 *supra*.

---

dence of blatantly racist motivation behind the adverse employment decision). Yet, *Robbins I* itself was reversed by the same panel, which concluded that the decision was not driven by racial animus. Perhaps the Eleventh Circuit can use the instant case to clarify this area of law.