**Marietta Lee CONNER,
Plaintiff-Appellant,**

v.

**FORT GORDON BUS COMPANY,
Defendant-Appellee.**

No. 84–8203.

United States Court of Appeals,
Eleventh Circuit.

May 30, 1985.

Hatchett, J., dissented and filed opinion.

Leon Larke, Augusta, Ga., for plaintiff-appellant.

Roy V. Harris, Robert W. Hunter, Augusta, Ga., for defendant-appellee.

Before JOHNSON and HATCHETT, Circuit Judges, and LYNNE *, District Judge.

JOHNSON, Circuit Judge:

Marietta Lee Conner filed this employment discrimination suit against the Fort Gordon Bus Company under 42 U.S.C.A. § 1981 (West 1981) and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e–2 to –17 (West 1981). The district court ruled in favor of the employer, finding that it had articulated a legitimate non-discriminatory reason for terminating Conner and that Conner had failed to prove that the reason was a pretext for sex discrimination. We affirm the judgment of the district court.

On February 6, 1981, the Fort Gordon Bus Company hired Marietta Lee Conner as a bus driver. At that time two of the seventeen other bus drivers working for the company were women. On May 4, 1981, the president of the company, E.C. Walton, was driving in his car when he observed a company bus make a dangerous and illegal left turn. The incident angered him because a bus driver making a similar illegal turn had recently caused an accident which had resulted in a $35,000 liability for the company.[1] The next morning he determined that Conner had been driving the bus and he gave instructions to terminate her. Walton also fired a male bus driver, Sexton, that same day for reckless driving that endangered the safety of passengers.[2]

The company had no formal or written guidelines covering the termination of bus drivers for unsafe driving. Many of the male drivers had received traffic citations and were reprimanded rather than terminated. Walton testified that he terminated drivers whose performance, in his judgment, seriously endangered the safety of the passengers or buses. That policy was strictly enforced after the $35,000 accident but Sexton, Conner, and the driver who had caused the previous accident were the only drivers terminated for reckless driving. Approximately four other drivers had been involved in accidents but none of them had been at fault.

In order to prove discriminatory treatment in violation of Title VII or Section 1981, a plaintiff-employee must establish a prima facie case of discrimination.[3] *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A prima facie case of discrimination raises the inference that discriminatory intent motivated the discharge of the employee. So long as the prima facie case of discrimination does not include direct evidence of discrimination,[4] the

---

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. The accident took place between 1979 and May of 1981. The record does not reveal a more specific date or the identity of the driver, other than the fact that he was a black male.

2. Sexton was terminated for operating a bus with the doors open. A representative of the company's insurer reported this safety violation to Walton.

3. In discharge cases, a plaintiff must show that he or she (1) is a member of a protected class, (2) was qualified for the position held, (3) was discharged, and (4) was replaced by a person outside the protected class. *Lee v. Russell County Bd. of Education*, 684 F.2d 769, 773 (11th

Cir.1982). The employer in this case does not challenge the district court's finding that Conner presented a prima facie case.

4. Where a plaintiff proves discrimination through direct evidence of discrimination, such as discriminatory statements by the employer, the employer cannot rebut the prima facie case of discrimination simply by articulating a legitimate non-discriminatory reason for the discharge. Where the direct evidence proves the existence of a discriminatory intent, the employer may escape liability only by showing that the same decision would have been reached absent the illegal motive. *Thompkins v. Morris Brown College*, 752 F.2d 558 (11th Cir.1985); *Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir.1985); *Bell v. Birmingham Linen Service*, 715 F.2d 1552 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104

employer may rebut the presumption by clearly articulating in a reasonably specific manner a legitimate non-discriminatory reason for the discharge. The plaintiff then must show that the proffered reason was a pretext for the true discriminatory reason. *See generally Burdine, supra; McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Miles v. M.N.C. Corp.,* 750 F.2d 867 (11th Cir.1985). On this appeal, Conner challenges the district court's findings that the Company articulated legitimate reasons for the discharge and that she failed to prove the pretextual nature of those reasons.

## ARTICULATION OF NON-DISCRIMINATORY REASON FOR DISCHARGE

 According to the Supreme Court's opinion in *Burdine, supra,* a prima facie case of discrimination does not place the burden of persuasion on the employer. The defendant rebuts the presumption of discrimination if it produces evidence that raises a genuine issue of fact as to whether it discriminated against the plaintiff; it must accomplish this by clearly setting forth, through the introduction of competent evidence, the reasons for the plaintiff's discharge. This Court has characterized this "exceedingly light" burden as being merely a burden of production and not a burden of proof. *Perryman v. Johnson Products Co., Inc.,* 698 F.2d 1138, 1142 (11th Cir.1983). Nevertheless, since the defendant's explanation must be clear and reasonably specific, *Burdine, supra,* 450 U.S. at 258, 101 S.Ct. at 1096, some proffered reasons will be legally insufficient to rebut a prima facie case. For instance, a defendant relying on a purely subjective reason for discharge will face a heavier burden of production than it otherwise would. *Robbins v. White-Wilson Medical Clinic, Inc.,* 660 F.2d 1064, 1067 (5th Cir. Unit B 1981), *vacated on other grounds,* 456 U.S. 969, 102 S.Ct. 2229, 72 L.Ed.2d 842 (1982). The plaintiff here contends that the

company failed to articulate a clear and reasonably specific non-discriminatory ground for discharging her because the explanation offered by Walton was subjective.

 Walton explained that Conner's discharge was based on his observation of an illegal left turn and his conclusion that the bus driver had endangered the safety of the passengers and the bus. This safety standard was interpreted by Walton alone; indeed, Walton never informed the drivers of the criterion he used for deciding when to terminate a driver. Yet neither of these circumstances renders this standard purely subjective. A standard known only to the employer and interpreted only by the employer could nevertheless be clear, specific and capable of objective evaluation, so long as the standard could be applied by a factfinder after the discharge has taken place and the standard has been revealed.

The unpublicized nature of a decision-making standard does not affect its clarity or specificity at trial. If an employer articulates at trial a clear and specific reason for discharging an employee, the purposes of the employer's burden of production have been met. The employee is given a reasonable opportunity for rebuttal, for she is accorded the opportunity to show her competence according to the stated objective criteria. *See Miles, supra,* at 871. Title VII does not require employers to inform employees of the reasons behind their evaluations. Failure to explain decisions to employees may prove bad management but it does not necessarily prove discrimination. *See Pace v. Southern Railway System,* 701 F.2d 1383, 1392 n. 8 (11th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983).

 Neither is a proffered explanation insufficiently clear or specific simply because an employer has interpreted the standard without recourse to written guidelines. Previous decisions of this Court suggest that an employer's proffered reasons

S.Ct. 2385, 81 L.Ed.2d 344 (1984); *Lee v. Russell Co. Bd. of Education,* 684 F.2d 769 (11th Cir.

1982). Conner presented no direct evidence of discrimination in this case.

are too subjective to qualify as clear and specific reasons only where a factfinder cannot reasonably determine whether or not they apply to the plaintiff. For instance, the employer in *Robbins, supra,* cited the plaintiff's unpleasant personality as the reason she was not hired. While the court noted that such a reason would not be legally insufficient in every case, it held that the peculiar definition of "pleasant personality" used by the employer, equating pleasant personalities with "white" personalities, was legally insufficient to rebut a prima facie case. In *Fowler v. Blue Bell, Inc.,* 737 F.2d 1007, 1010–11 (11th Cir. 1984), the employer refused to hire the plaintiff because of his prediction, based on the applicant's record, that he would not last long at the company. The Court found this reason sufficient to rebut the prima facie case and distinguished *Robbins,* stating that the proffered reason was "somewhat subjective, [but] not so incapable of objective evaluation as to render it inadequate to meet the defendant's burden of rebuttal." The employer's conclusion was based on a review of a written application, but he evaluated that material according to personal standards.

■■■■ The standard used by the defendant in this case, unreasonable endangerment of passengers and property, is capable of objective evaluation. It resembles the objective duty of reasonable care employed by a court adjudicating tort claims. The plaintiff has not shown that Walton interpreted the standard in such an unusual manner, contrary to the normal meaning of the words, that a factfinder could not reasonably determine whether that standard was relied upon in any given case. The standard had a meaning accessible to Conner; she was able to question whether on a rational and objective basis her case fell within the described category. While it remains true that this Court disfavors subjective methods of evaluation because they provide a ready mechanism for

racial discrimination, *Miles, supra,* at 871; *Parson v. Kaiser Aluminum & Chemical Corp.,* 575 F.2d 1374, 1385 (5th Cir.1978), *cert. denied,* 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979), a legitimate ground for decision articulated by an employer, even a ground that requires interpretation on the part of the employer, is legally sufficient to satisfy the employer's burden of production so long as it is capable of objective evaluation.

Of course, the fact that an employer never formally announces a decisionmaking criterion and interprets it according to its own lights is relevant to a plaintiff's claim of discrimination. The use of unannounced policies, interpreted according to subjective criteria, will tend to support a plaintiff's claim of pretext. The articulated explanation in this case, however, was sufficiently clear and specific to force the plaintiff to prove, if she could, that it was a pretext.

PROOF OF PRETEXT

■■■■ After the defendant articulates legitimate non-discriminatory reasons for a discharge, the plaintiff must prove by a preponderance of the evidence that the articulated reasons were not the sole causes of the discharge but rather that discrimination made a difference in the decision. *O'Donnell v. Georgia Osteopathic Hospital, Inc.,* 748 F.2d 1543, 1550 (11th Cir. 1984). This Court may overturn a factual finding on the issue of pretext only if it is clearly erroneous. *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1129 (11th Cir.1984).

■■■■ In order to support her contention that the district court clearly erred in finding no pretext in this case, Conner points to three questionable aspects of Walton's decision. First, she emphasizes that Walton never stated before the time of trial that he terminated drivers for safety violations serious enough to place passengers and property in unreasonable danger, nor did he ever explain precisely what sort of safety violations would fall into this category.[5]

---

5. Walton stated during cross-examination that illegal turns were more reckless than most speeding violations. Counsel for Conner did not pursue the matter any further or ask Walton to explain his definition of recklessness.

As discussed earlier, the relative subjectivity of the employer's reason does support Conner's claim of pretext. Yet it cannot be said that a failure to find pretext is clearly erroneous whenever an employer's reason for discharge is an informal and unwritten policy subject to differing interpretations. Such criteria will not in and of themselves violate Title VII. *See Allison v. Western Union Telegraph Co.,* 680 F.2d 1318, 1322 (11th Cir.1982).

In this case Conner failed to present any evidence at all that the termination policy was unevenly applied. While Walton admitted that some male drivers had only been warned after receiving traffic citations from the police, he stated that those infractions had not been as serious as the ones committed by Conner and Sexton. Conner presented no evidence at all regarding the nature of the safety violations of drivers who were merely reprimanded, leaving Walton's testimony on the subject entirely uncontradicted. The only specific incidents of unsafe driving described at trial, those committed by Conner, Sexton, and the driver who had caused the $35,000 accident, had resulted in terminations.[6] Furthermore, Conner never argued that the criterion allegedly used by Walton was an unusual one in the industry or one that the bus company would be unlikely to use. In the absence of supporting evidence of this sort, the district court was not clearly erroneous to find in favor of the defendant even after Conner showed that Walton's basis for discharging her was an informal policy, subject to interpretation.

█ Second, Conner points out that Walton never attempted to confirm the accuracy of his belief that she had made an illegal left turn. An employer's lack of concern about the accuracy of its decision may support a claim of pretext, particularly where the possibility of error is great and confirmation could be easily obtained. *See DeLesstine v. Fort Wayne State Hospital and Training Center,* 682 F.2d 130,

136 (7th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982); *Williams v. Trans World Airlines, Inc.,* 660 F.2d 1267, 1271–72 (8th Cir.1981). Still, no court has held that lack of concern about the accuracy of a decision will, as a matter of law, establish a pretext. Further, Walton had no reason to doubt that a driver had made an illegal and dangerous left turn because he had seen it himself. The identity of the driver was duly ascertained by a search of business records. Under these circumstances, Walton's failure to seek further confirmation that Conner had committed a serious safety violation did not diminish the credibility of his proffered reason for discharge.

█ Finally, Conner argues on appeal that Walton did not decide to terminate the offending driver until after he had determined her identity. Proof of this fact would possibly establish pretext and the district court recognized as much by focusing on this matter in its findings of fact. The testimony of Walton on this topic contained an ambiguity, for he stated that "I determined who was driving the bus and I gave instructions that that person should no longer be a bus driver." The statement establishes when Walton gave the order to terminate but does not reveal when he made the decision to terminate. The court considered this testimony and the complete failure of the plaintiff to inquire into the issue before concluding that "I don't think that has been proven either way." Hence, the court found that Conner failed to meet her burden of proof. Given the lack of evidence on this point, we cannot conclude that the district court was clearly erroneous.

CONCLUSION

The reason given by Walton for his discharge of Conner was sufficiently clear and specific to meet the employer's burden of production. Even though there are reasons in this case to question whether Wal-

---

6. Conner testified that Sexton had a tendency to drive too quickly while turning and was not terminated for that reason. She did not produce any evidence, however, that any of these incidents came to the attention of Walton or any other official of the company.

ton's explanation was a pretext for discrimination, none of them show that the district court clearly erred in its finding that Conner failed to prove discrimination by a preponderance of the evidence. Therefore, the judgment of the district court is AFFIRMED.

HATCHETT, Circuit Judge, Dissenting:

I agree with the law as announced by the majority: This court disfavors subjective methods of evaluation because they provide a ready mechanism for discrimination. We differ on the application of this rule of law to the facts in this case. I write to illuminate the facts because those who must apply this rule of law in the circuit may better do so when the facts, and all reasonable inferences to be drawn from them, are fully set forth and evaluated.

The facts in this case are more egregious than in any prior case involving subjective standards for hiring, promotion or termination. The majority fails to appreciate the fact that in this case, the claim is not merely that the employer used a subjective standard for termination; the claim is that the employer changed from one subjective standard to another subjective standard "in the twinkling of an eye." This is a "double dose" of the subjective policy problem.

Until Conner made the left turn (which she denies), the subjective policy was not to fire drivers for traffic violations. Even where the traffic violation resulted in the issuance of a traffic citation, it was the policy of the bus company not to terminate bus drivers. The policy, if sporadic day-by-day events may constitute a policy, was to reprimand the driver; yet even these reprimands were informal. The majority treats this case as a run of the mill subjective policy case without giving weight to the fact that this unwritten and unannounced policy applied to Conner was never applied to any other driver.[1] The policy which resulted in Conner's termination not only had never been applied to anyone else, but was formed by Walton after determining the identity of the bus driver. This case illustrates the reason for this circuit's strong disfavor for subjective standards when advanced to show a legitimate non-discriminatory reason for the action taken.

A comparison of our cases on the subject of subjective determinations shows how loosely the circuit rule is being applied in this case.

In *Miles v. MNC*, 750 F.2d 867 (11th Cir.1985), Miles alleged racial discrimination when MNC, her employer, did not re-hire her after a temporary layoff. The court found that MNC based its decision solely upon subjective evaluations of Miles's work performance. Further, "evidence in the case established that there were not guidelines for evaluating performance, written worker evaluations or regular work checks done on the employees' work habits." *Miles*, 750 F.2d at 871. Additionally, the MNC plant manager, conducted all worker evaluations. We found MNC's subjective evaluations, without more, insufficient to sustain its burden of production, stating: "Subjective and vague criteria may be insufficient reasons given by an employer for its failure to rehire because such criteria do not allow a reasonable opportunity for rebuttal." *Miles*, 750 F.2d at 871.

*Miles* is less egregious than this case. In this case, one management figure, the president, subjectively evaluated Conner's driving skills after learning her identity.[2] The bus company had not developed any guidelines or criteria upon which to assess worker performance. Because the bus company had no objective standards, Conner was unable to ascertain the consequences of her subsequent actions. Like-

---

1. The fact that the bus company also fired Sexton, another driver, on the same day it fired Conner is of no moment; the facts of his case are not in this record, and that event without more is irrelevant. What happened in the months and years before the bus company fired Connor is what is relevant.

2. Unfortunately, the record is not as clear as we would desire regarding the company president's knowledge of the identity of the offending bus driver or the president's method and timing in making that determination.

wise, for the same reasons, she is denied a reasonable opportunity for rebuttal.

In *Williams v. City of Montgomery,* the City of Montgomery Fire Department discharged Williams, a black male, after he committed a felony. 742 F.2d 586 (11th Cir.1984). The city maintained a mandatory policy requiring the discharge of any fire fighter convicted of a felony. Two years earlier, the city had terminated two white males because of their felony convictions; both fire fighters appealed to the Montgomery City-County Personnel Board, which reinstated them. The city did not reinstate Williams. We said: "The city and the Board submitted that the white fire fighters' offenses were less serious than Williams's offense and that the white fire fighters received more support from the fire department than did Williams. Besides being subjective, these reasons are irrelevant." *Williams,* 742 F.2d at 588 n. 2. We found the city's articulated reason insufficient to sustain its burden of production. In this case Conner's making of the left turn became more serious than any of the other many violations committed by other bus drivers. The company president's distinction between driver violations subject to termination and those rendered harmless remains undefined. As to dangerousness, the company's president "knows it when he sees it," and relies on the courts to unquestionably accept his determination. Absent from this record is anything to indicate the facts surrounding the alleged left turn. We are left to believe the company president that the "no firing for violations policy" changed and the turn was dangerous.

In *Lee v. Conecuh County Board of Education,* Gantt, a black male teacher, alleged racial discrimination because the Conecuh County Board of Education repeatedly failed to promote him to principal. 634 F.2d 959 (5th Cir.1981). We found: "Despite the objective evidence of Gantt's superior qualifications, defendants contend that they refused to promote him because they consider him unfit for a principalship." *Lee,* 634 F.2d at 963. The school board based its decision on subjective evaluations of Gantt's teaching ability, relying on the evaluations of a single supervisor. We stated: "Establishing qualifications is an employer's prerogative ... but an employer may not utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its promotion process, for example, is challenged as discriminatory." *Lee,* 634 F.2d at 963 (citing *Rowe v. General Motors Corp.,* 457 F.2d 348, 358 (5th Cir.1972)). We found the school board's argument unpersuasive and insufficient to rebut Gantt's prima facie case.

Likewise, one Fort Gordon management figure terminated Conner based upon his subjective evaluations. Similar to *Lee,* an employer may not utilize wholly subjective standards by which to critique and discharge an employee and subsequently meet his burden of producing a legitimate nondiscriminatory reason by arguing that the employee arguably violated safety standards about which she was totally unfamiliar.

In case after case, we have determined that subjective standard evidence is too unreliable to overcome a prima facie case of discrimination. Because the majority cites the rule, but fails to properly apply it in this case, I dissent.