**Troy Eric CRUMP, Sr., Plaintiff,**

v.

**DULMISON, INC., Defendant.**

**Civ. A. No. 86–371–2–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

June 13, 1989.

Brian J. Passante, Macon, Ga., for plaintiff.

Benjamin M. Garland, Macon, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

Plaintiff Troy Eric Crump, a black male, filed his *pro se* civil rights complaint on November 26, 1986, alleging that defendant Dulmison, Inc. had "laid him off" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* Plaintiff Crump attached to his handwritten complaint the charges he made to the Equal Employment Opportunity Commission ("EEOC") as well as the EEOC's letters advising him of his right to bring an action in federal court. Defendant filed a motion for summary judgment on July 1, 1987. On or about September 8, 1987, prior to considering defendant's motion, this court appointed as counsel for plaintiff Mr. Brian J. Passante. Discovery ensued and briefs and memoranda of law were filed. In plaintiff's responses to defendant's motion, plaintiff contended that certain claims had been properly raised in plaintiff's *pro se* complaint and were thus properly before the court. Defendant disagreed. After some consideration, this court permitted

plaintiff to amend his complaint. *See Crump v. Dulmison, Inc.*, Slip Op. No. 86–371–2–MAC (WDO) (M.D.Ga., November 3, 1988). Plaintiff amended his complaint on November 18, 1988, alleging the following violations: (1) discrimination in the administration of Dulmison's seniority system in the layoff, termination and recall of blacks, including this plaintiff; (2) discrimination in the notice to and the election process for employees to participate in on-the-job training opportunities; and (3) discrimination in the compensation paid employees performing substantially the same work. *See* Plaintiff's Amended Complaint, ¶¶ 2–6. Plaintiff intends to establish the above violations utilizing both the disparate impact and the disparate treatment methods of analysis. Additional pleadings have been filed, and this matter is now ripe for decision. Thus, the court enters the following order.

### Facts

1. Defendant Dulmison, Inc. is a Georgia corporation which manufactures equipment for high voltage transmission wires. At the time relevant to this litigation, Mr. Mike Huston served as production manager of Dulmison. Mr. Huston described Dulmison's plant as consisting of five distinct work areas: foundry, saw, grinding, subassembly and final assembly. A sixth area, wire forming, has been expanded recently into a separate work area. *See* June 24, 1987, Affidavit of Mike Huston ("First Huston Affidavit"), pp. 1–2.

2. Plaintiff Troy Crump first worked at the Dulmison plant as a temporary laborer. He was hired as a permanent employee in May or June of 1984. *See* March 15, 1988, Affidavit of Troy E. Crump ("Crump Affidavit"), p. 2; First Huston Affidavit, p. 2.

3. Plaintiff's initial assignment upon employment was in the grinding area. However, Mr. Crump worked in various areas of the plant for indefinite periods of time on an "at need" basis, a practice customary at Dulmison and one applicable to most, if not to all, of Dulmison's employees. *See* Crump Affidavit, pp. 2, 5–6; First Huston Affidavit, p. 2; Deposition of Mike Huston ("Huston Deposition"), pp. 10, 40; Deposition of Troy E. Crump ("Crump Deposition"), pp. 40–48.

4. On occasion, defendant Dulmison permanently transferred an employee from one area of task assignment to another such area. These decisions were based upon the company's determination that an individual had either a present or prospective ability to perform competently in the new area of task assignment. Dulmison did not have a formal system for notifying employees of vacancies or needs in particular areas, nor did it have a formal system by which employees might apply for transfers to a particular area. *See* Huston Deposition, pp. 30–31. Plaintiff Crump is uncertain whether he ever requested a permanent reassignment. *See* Crump Deposition, p. 47.[1]

5. Dulmison frequently transferred an individual from his area of permanent assignment to one in which additional manpower was temporarily needed. A temporary assignment to a particular area was distinguished from a permanent assignment primarily upon the individual's length of service there. An employee had to remain in a certain area "two or three months" before the company reclassified that employee's area of permanent assignment. *See* Huston Deposition, pp. 41–42.

6. Dulmison kept few personnel records. It was "more interested in trying to make the company profitable and make it stay in business than keep[ing] records." *Id.* at 27.

7. Dulmison, Inc. manufactured fittings to bolster high voltage electrical power lines and fittings that reduce aeolian vibrations along those same lines. Dulmison sold its products to various utility companies in the United States, Canada and South America. *Id.* at p. 5.

Dulmison's business was to some degree seasonal in nature. Dulmison's customers,

---

**1.** Subsequent to the matters raised by this lawsuit and upon being recalled by defendant Dulmison, plaintiff Crump did request a transfer to another area within the plant. This request was granted. Mr. Crump decided not to accept the reassignment. *See* Affidavit of Andy Johnson.

the utilities, required delivery of the components manufactured by Dulmison in early to mid summer to ensure ample time for the installation of those components prior to the onset of the colder fall and winter months. Consequently, Dulmison's busiest season corresponded with North America's spring and early summer. June was the most critical month at Dulmison. *Id.* at p. 10; First Huston Affidavit, pp. 2–3.

8. In July of 1985, Dulmison had completed certain orders and/or contracts. The resulting decline in the amount of work coupled with an excess work force precipitated certain layoffs by Dulmison. *See* First Huston Affidavit, pp. 2–3; Huston Deposition, pp. 14–15; Crump Deposition, pp. 55–67. Excess employees existed primarily in the saw, grinding and assembly areas. *See* First Huston Affidavit, p. 3.

9. Prior to the layoffs which occurred in July and August of 1985, Dulmison had occasion to lay off one employee. Upon the suggestion from the plant foreman that a certain employee desired to cease working for Dulmison, Mr. Huston laid off that particular employee. *See* Huston Deposition, p. 16.

10. The layoffs of July and August of 1985 were accomplished according to seniority within the various areas of permanent assignment with the relevant date for seniority purposes being the date of hire. Mr. Huston stated that this policy of determining seniority within areas of permanent assignment was the normal method used by Dulmison and that such a procedure was required by law in his home country of New Zealand. *See* Huston Deposition, pp. 16–17.

11. Plaintiff Troy Crump was laid off on or about July 16, 1985. *See* Crump Deposition, p. 55; EEOC Form 5 attached to plaintiff's *pro se* complaint. At the time of this employment action, a shortage of work existed at the plant. *See* Crump Deposition, pp. 57, 66–67. When his layoff was announced, plaintiff was the least senior permanent employee permanently assigned to the grinding area. Furthermore, plaintiff was also the least senior employee in the zinc foundry, an area to which plaintiff was temporarily assigned on the date of his layoff. *Id.* at p. 39.

12. Plaintiff was one of four employees laid off by defendant Dulmison during the slow summer months of 1985. The names of those laid off, their race, their sex and their assigned area of employment are as follows: (1) Troy Crump—black male assigned to grinding; (2) Bobby Malone—white male assigned to assembly; (3) Lakeith Tucker—black male assigned to assembly; and (4) Kerry Walker—white male assigned to heliformed. *See* Huston deposition, p. 17.

13. Defendant Dulmison did not replace Mr. Crump with a permanent employee between the time of his layoff in 1985 and the company's recall of Mr. Crump by letter dated March 11, 1988. *See* Defendant's Exhibit 7, attached to Huston Deposition. However, persons were transferred into the grinding area on a temporary basis during that period. *See* Huston Deposition, p. 40; *see also* Crump Deposition, p. 84.

13. Troy Crump filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on August 16, 1985. Plaintiff's EEOC complaint alleged racial discrimination and listed the following four bases for that charge:

(a) At the time of my layoff there were several people (Steve, Thomas, and Hally) (white) who have significantly less seniority than I, yet, they are working and I have been laid off.

(b) Blacks are paid less than whites for doing substantially equal work.

(c) Whites are given the opportunity to be trained on new equipment while Blacks are relegated to jobs that pay less even though we have more seniority than our white counterparts.

(d) Pespondent (sic) has laid off Black employees and later rehired them changing their seniority dates in an effort to give whites more seniority and opportunities than Blacks.

EEOC Form 5, attached to plaintiffs *pro se* complaint. By letter dated August 28, 1986, the EEOC informed Mr. Crump that "there is no reasonable cause to believe"

the allegations of racial discrimination were true. Enclosed was plaintiff's notice of right to sue. Plaintiff filed his *pro se* complaint in this court on November 26, 1986. As stated previously, this court has appointed an attorney to represent Mr. Crump. Through his counsel, plaintiff has filed an amended complaint alleging certain discriminatory conduct by defendant Dulmison.

14. In June and July of 1985, prior to the work slowdown and the employee layoff, Dulmison employed twenty-nine (29) employees—ten (10) black employees and nineteen (19) white employees. *See* Huston Deposition, p. 16. Attached as an appendix to this order is Defendant's Exhibit A to Huston's Deposition, an exhibit listing the employees of Dulmison on July 10, 1985.

### Conclusions of Law

1. Title VII of the Civil Rights Act of 1964, as codified at 42 U.S.C. § 2000e–2, makes it unlawful for an employer "to discharge ... or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race ..." 42 U.S.C. § 2000e–2(a). Nor can an employer discriminate against an individual on the basis of race in the administration of an apprenticeship or other training or retraining program. *See* 42 U.S.C. § 2000e–2(d). However, an employer does not violate Title VII where it applies "different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system...." 42 U.S.C. § 2000e–2(h). This court has jurisdiction over disputes arising under Title VII pursuant to section 706(f)(3) of that Act, as amended, 42 U.S.C. § 2000e–5(f)(3).

2. Section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e), requires an aggrieved party to file a charge of discrimination with the EEOC within one hundred and eighty days from the date upon which the alleged unlawful employment practice occurred. A party's noncompliance with this statutory requirement bars action in a federal court unless such noncompliance is excused by

waiver, estoppel, or equitable tolling. *Zipes v. Trans World Airlines*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (in *Zipes* the requirement was held to be similar in nature to a statute of limitations). Upon the completion of an investigation by the EEOC and upon the receipt of a notice of right to sue, an aggrieved individual may bring a civil action against the respondent identified in the charge. *See* 42 U.S.C. § 2000e–5(f)(1). The instant action was timely filed in this court.

3. "[S]ome facially neutral employment practices may violate Title VII even in the absence of a demonstrated discriminatory intent." *Watson v. Ft. Worth Bank & Trust*, 487 U.S. ——, ——, 108 S.Ct. 2777, 2785, 101 L.Ed.2d 827, 841 (1988). Accordingly, "subjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases." *Id.* at ——, 108 S.Ct. at 2787, 101 L.Ed.2d at 843.

4. However, pursuant to section 703(h) of Title VII as that section has been construed by the Supreme Court of the United States, *"bona fide"* seniority systems which are applied equally to all races and ethnic groups are not subject to attack from a plaintiff utilizing the disparate impact approach. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 349–356, 97 S.Ct. 1843, 1861–65, 52 L.Ed.2d 396, 424–428 (1977). While plaintiff has alleged that the department based seniority system utilized by defendant Dulmison is irrational in light of Dulmison's operation and contends that a plant-wide seniority system is the more appropriate method of ascertaining seniority for purposes of transfer, promotion and layoffs, plaintiff has produced no facts which tend to undermine the *bona fide* character of the seniority system in place. Plaintiff's contention that the departmental system presently employed is merely a pretext for discrimination is an argument properly presented in a case alleging disparate treatment. Therefore, based upon section 703(h) and *International Brotherhood of Teamsters*, this court determines that plaintiff is unable to pursue his attack

upon the seniority system under a disparate impact analysis.

■ 5. Regarding plaintiff's two additional grounds, discrimination in Dulmison's notice to and its election practices for participation in on-the-job training opportunities and discrimination in the compensation paid to employees performing substantially similar work, to the extent that those matters are not governed by the seniority system, plaintiff must first identify "the specific employment practice that is challenged." *Watson*, 487 U.S. at ——, 108 S.Ct. at 2788, 101 L.Ed.2d at 845, citing *Connecticut v. Teal*, 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982).

> Once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected class. Our formulations, which have never been framed in terms of any mathematical formula, have consistently stressed that statistical disparities must be sufficiently substantial that they raise such an inference of causation.

*Watson*, 487 at ——, 108 S.Ct. at 2788–89, 101 L.Ed.2d at 845; *see also Ward's Cove Packing Company, Inc. v. Atonio*, —— U.S. ——, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) (Supreme Court concluded that plaintiff in a Title VII case may not rely solely upon a "bottom line" statistical disparity but instead must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack and that to support a cause of action each challenged practice must be shown to have had a sig-

nificantly disparate impact on employment opportunities of whites and nonwhites).

Assuming that plaintiff has sufficiently specified the employment practices at issue, a generous assumption in this case, this court determines that plaintiff has failed to offer statistical evidence of sufficient kind or degree to establish that the practice(s) in question has caused or resulted in fewer blacks than whites participating in on-the-job training opportunities [2] or in discriminatory compensation levels being established. The statistical evidence in the record merely establishes categories of employees and their respective compensation levels. Those statistics do not indicate in what manner, if any, the alleged practices of Dulmison have impacted upon the training opportunities or compensation levels of minority workers. Such information is insufficient to create even an inference that the alleged practices have had a disparate impact upon either Mr. Crump or blacks in general. Thus, because plaintiff has failed to adduce facts which tend to show that a facially neutral practice has a substantial adverse impact upon either Mr. Crump or a protected group, plaintiff has failed to establish a *prima facie* case of discrimination. *See Chaney v. Southern Railway Co.*, 847 F.2d 718, 724 (11th Cir.1988).

6. When proceeding upon a disparate treatment analysis, the plaintiff must establish that the defendant employer acted with a discriminatory intent or motive. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215 (1981); *Hill v. Metropolitan Atlanta Rapid Transit Authority*, 841 F.2d 1533, 1538 (11th Cir. 1988). Absent direct evidence of such discriminatory intent or motive, plaintiff in the instant case can establish a *prima facie* case of disparate treatment by showing

**2.** As indicated in the findings of fact, *supra,* defendant Dulmison has no formal policy regarding notification either of vacancies in certain positions or of training opportunities in certain positions. In the affidavits of Andy Johnson, supervisor of foundry operations, and Thomas J. Alderton, president and general manager of Dulmison, both men state that Dulmison has no on-the-job training. Employees are trained, upon hiring, to operate the machines

which they were hired to operate. Both Mr. Johnson and Mr. Alderton corroborate the statements of Mike Huston to the effect that employees' requests for transfer were honored if possible, and that employees were trained to operate the equipment in an area to which any employee might have transferred. *See* Affidavits of Andy Johnson and Thomas J. Alderton. Plaintiff has produced no evidence to the contrary.

that he is a member of a racial minority and that he was treated differently from similarly situated non-minority members. *See Marshall v. Western Grain Co., Inc.,* 838 F.2d 1165, 1168 (11th Cir.1988). Plaintiff is without question a member of a racial minority. To satisfy the second prong of the above standard, plaintiff in this case must establish one or all of the following: (1) that he was laid off in contravention of the seniority system while non-minority individuals similarly situated remained on the payroll; (2) that as compared to similarly situated non-minority individuals, plaintiff was not afforded an opportunity to train for and transfer to new positions within the plant; or (3) that plaintiff was compensated at a level below that which non-minority employees of similar status were compensated.[3] *See Holt v. Gamewell Corp.,* 797 F.2d 36 (1st Cir.1986) (reduction in force case alleging age discrimination); *EEOC v. Western Elec. Co., Inc.,* 713 F.2d 1011 (4th Cir.1983) (reduction in force case alleging age discrimination); *c.f. Lee v. Russell County Bd. of Education,* 684 F.2d 769 (11th Cir.1982) (adopting the test announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to set the standard for a Title VII "discharge" case).

7. A *prima facie* case of discrimination raises the inference that discriminatory intent motivated the conduct of the employer. An employee "may rebut the presumption by clearly articulating in a reasonably specific manner a legitimate non-discriminatory reason for the [conduct]. The plaintiff then must show that the proferred reason was a pretext for the true discriminatory reason." *Conner v. Fort Gordon Bus Co.,* 761 F.2d 1495, 1499 (11th Cir.1985), citing *Burdine, supra; McDonnell Douglas Corp., supra;* and *Miles v. M.N.C. Corp.,* 750 F.2d 867 (11th Cir.1985).

■ 8. Plaintiff's claim that he was laid off in violation of the departmental seniority system while non-minority individuals with less departmental seniority were retained is a conclusory allegation unsupported by any facts. In truth, during the three-week period within which Mr. Crump was laid off, three other individuals were likewise laid off, two of whom were white. These individuals were the least experienced employees in their particular areas of permanent assignment. Both the areas of assembly and grinding were identified by Mr. Huston as areas suffering from a shortage of work, and three of the four employees laid off were assigned to those areas. Additionally, Mr. Crump was the least senior grinder in an area identified by defendant and undisputed by plaintiff as being one in which the amount of work had declined. *See* Huston Affidavit; Crump Deposition, p. 57. Further, of the four white individuals identified by plaintiff as having been retained with less seniority, the court notes that one of those individuals, Bobby Malone, was laid off on July 17, 1985. Though two of the other individuals, Holly Foskey and Thomas Burke, were in the identified layoff area of assembly and had less seniority than did plaintiff, the court notes that two individuals were laid off in assembly, including Lakeith Tucker, the individual in that area with the least seniority. *See* Appendix. In light of the evidence, this court determines that plaintiff has failed to establish a *prima facie* case of discrimination regarding that aspect of his claim.

■ 9. Similarly, plaintiff's allegations regarding discrimination in on-the-job training lack any basis in fact. Defendant's employees have stated definitively that Dulmison does not have an on-the-job training program. Instead, employees might request a transfer to a different task area or a different job. Those requests are honored when practicable. Dulmison on occasion transfers an employee who has a particular aptitude for another task or job. In neither situation, that is, transfer by employee request or by employer reassignment, has plaintiff produced any evidence that such requests or transfers were considered or accomplished in any manner differently for Mr. Crump or other minority

---

**3.** The requirements described herein have been developed by this court to fit the particular allegations raised by plaintiff after considering numerous Title VII cases.

members than such requests or transfers were handled for white employees. Failing to produce any evidence of disparate treatment, plaintiff has failed to establish a *prima facie* case of discrimination regarding this allegation.

■ 10. Finally, plaintiff's allegation regarding discriminatory compensation practices are not supported by the record. Plaintiff has produced no evidence that tends to show that either Mr. Crump in particular or blacks in general are compensated at a rate less favorable than that at which non-minority individuals are compensated. Within plaintiff's assigned area of grinding, he was being compensated at $5.75 per hour, a rate equivalent to that at which two of the three other employees likewise assigned were compensated. Fifteen of the twenty-eight non-salaried employees identified on the Appendix to this order were paid at an hourly wage equal to or less than the wage paid to Mr. Crump. Eight of those employees are white. Mr. Crump's hourly wage was commensurate with all other individuals hired at or near the same time as he was fired. The only employee paid at a higher hourly wage than Mr. Crump with less experience was Zachary Johnson, a black individual hired three days later than plaintiff yet one being compensated at a rate slightly higher ($.25/hr.). Though ten of the remaining thirteen employees are white, each of those individuals, with the exception of Tommy Wilson, has considerably more experience than Mr. Crump, and most are performing either in a supervisory or skilled machinist capacity. In short, plaintiff has failed to produce evidence which establishes a *prima facie* case of discrimination with regards to compensation.

11. Plaintiff Crump alleges that the departmental based seniority system is inappropriate in the context of Dulmison's operation and that such system is merely a pretext for discrimination. First, the court notes that the question of pretext is one properly considered after plaintiff has established a *prima facie* case. *See Burdine, supra; McDonnell Douglas Corp., supra.* Here, however, since plaintiff is alleging that the application of the departmental system serves to preclude a meaningful inquiry into the alleged discrimination, the court has considered that argument.

Clearly, the use of a departmental seniority system is not a *per se* violation of Title VII. *See Watkins v. United Steelworkers of America, Local No. 2369,* 516 F.2d 41 (5th Cir.1975). While Dulmison's practice of temporarily reassigning employees to other areas when work so requires makes the use of a plant-wide seniority system seem just as reasonable as one based upon departmental seniority, plaintiff has produced no evidence which creates an inference that the departmental system is discriminatorily applied. That being the case, this court finds it inappropriate to base a determination of discrimination upon plaintiff's allegation that one seniority system might be better than another. Absent discrimination, this court does not redesign the employment practices of an employer. The court also notes that individuals, black and white, would most likely be laid off and recalled more often absent defendant's willingness to transfer those employees competent to perform elsewhere from less busy areas to those areas in which the workload has increased.[4] In conclusion, the court determines the use and application of a departmental seniority system does not in this situation constitute a discriminatory practice.

12. Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c) requires the entry of summary judgment, upon motion, against a party who, after adequate time

---

4. Defendant Dulmison has stated that not every one of its employees is capable of performing competently in other areas. Thus, the use of a plant-wide seniority system could serve to undermine the productivity of its operation. *See* Huston Deposition, pp. 30–34.

for discovery, fails to make a showing sufficient to establish the existence of any element essential to his case and upon which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Movant may discharge this burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554, 91 L.Ed.2d at 275. The court, however, must review the evidence and all factual inferences in the light most favorable to the nonmovant. *Thrasher v. State Farm Fire & Casualty Co.,* 734 F.2d 637, 639 (11th Cir.1984).

13. "As a general rule, summary judgment is not a proper vehicle for resolving claims of employment discrimination which often turn on an employer's motivation and intent." *Delgado v. Lockheed–Georgia Co., A Division of Lockheed,* 815 F.2d 641, 644 (11th Cir.1987). However, summary judgment in such cases is not forbidden. *See Grigsby v. Reynolds Metals Co.,* 821 F.2d 590 (11th Cir.1987).

14. In accordance with Rule 56 and the cases cited above, this court determines that there remains no genuine issue as to any material fact and that defendant is entitled to summary judgment as a matter of law. Under the disparate impact analysis, plaintiff's evidence falls far short of creating an inference that defendant's practices have a disparate impact upon Mr. Crump. Considering the disparate treatment analysis, plaintiff has failed to produce evidence from which a reasonable inference of discrimination can be drawn. Thus, defendant Dulmison's motion for summary judgment is hereby GRANTED.

SO ORDERED.

APPENDIX

 **DULMISON**

### EMPLOYEES AT JULY 10, 1985

| HIRE DATE | EMPLOYEE | RACE | AREA | PAY |
|---|---|---|---|---|
| 11-25-80 | Al Moss | Black | Zinc Foundry | $7.25 |
| 08-17-82 | Burt Ward | White | Alum Foundry/ Lead Man | $7.40 |
| 12-13-83 | Philip Hammond | White | Alum Foundry | $6.75 |
| 12-13-83 | Billy Sanders | White | Alum Foundry | $5.75 |
| 06-11-84 | Zackary Johnson | Black | Alum Foundry | $6.00 |
| 10-02-84 | Terry Powell | Black | Alum Foundry | $5.50 |
| 06-15-83 | James Strawn | White | Foreman | Salaried |
| 12-12-83 | Jeff King | White | Leading Hand | $7.50 |
| 11-21-83 | Daniel Makela | White | Storeman | $7.00 |
| 11-08-83 | Carlos Hester | White | Machine Setter/ Operator | $7.00 |
| 11-25-83 | Matt Makela | White | Machine Setter/ Operator | $6.75 |
| 05-26-84 | Tommy Wilson | White | Machinist | $6.75 |
| 06-22-81 | Leo Williams | Black | Grinder | $6.25 |
| 11-18-83 | Donald Gainey | Black | Grinder | $5.75 |
| 11-28-83 | Alvin Myrick | Black | Grinder | $5.75 |
| 06-08-84 | Troy Crump | Black | Grinder (Laid Off 7-10-85) | $5.75 |
| 07-29-81 | Albert Russell | White | Saw | $6.25 |
| 12-13-83 | Arthur Gainey | Black | Saw | $5.75 |
| 02-13-85 | Richard Rutledge | White | Part Time Saw Part Time Storeman | $5.00 |
| 10-27-83 | Denise Smith | White | Assembly | $5.50 |
| 11-29-83 | Connie Braswell | Black | Assembly | $5.50 |
| 01-02-84 | Vicki Adkins | White | Assembly | $5.50 |
| 02-14-85 | Bobby Malone | White | Assembly Laid Off 7/17/85 | $4.50 |
| 04-22-85 | Thomas Burke | White | Assembly/Drill | $5.00 |
| 05-15-85 | Holly Foskey | White | Assembly | $5.00 |
| 06-10-85 | Lakeith Tucker | Black | Assembly Laid Off 7/10/85 | $4.50 |
| 09-29-83 | James Clinkenbeard | White | Heliformed* | $5.80 |
| 05-26-82 | Julie Jones | White | Heliformed* | $6.75 |
| 03-01-85 | Kerry Walker | White | Heliformed* Laid Off 8/7/85 | $5.00 |

DEFENDANT'S EXHIBIT
A
6-28-88